STATE OF NORTH CAROLINA v. DOUGLAS B. PARKER

No. 527A87

(Filed 30 June 1988)

**1. Criminal Law § 66.2— uncertain in-court identification—admission not prejudicial**

There was no prejudice in a prosecution for rape, kidnapping, and robbery from the trial court's denial of defendant's motion to suppress the victim's in-court identification of defendant where the victim was never able to positively identify her assailant; she had been unable to identify defendant's photograph in a lineup prior to trial and had specifically excluded it from consideration; although she testified in the presence of the jury that she believed defendant was the man who attacked her, she clearly stated at all times that she could not be sure; an officer testified that she had spoken with defendant' on the night in question as he was standing outside of his car; she was able to get a good look at him because the street was well lighted; and she unequivocally identified defendant as the man she had seen. The Court was confident beyond any reasonable doubt that the jury relied upon the officer's testimony and the admission of the tentative in-court identification by the victim was harmless error, if error at all. N.C.G.S. § 15A-1443(b).

**2. Robbery § 4.7— common law robbery—evidence insufficient**

The trial court erred by denying defendant's motion to dismiss the charge of common law robbery at the close of the evidence where defendant kidnapped, raped, and took from his victim a watch given to her by her mother; the victim told defendant that she would get money from her dormitory room and give it to him in exchange for the watch as he was driving her back to her dormitory; the victim specifically testified that at that time, the defendant's gun was no longer in sight and she did not feel threatened by him; defendant agreed to the exchange; defendant told her that if she tricked him, he would come back because he knew where she lived, but the victim did not tell him that she was only staying at that dormitory for the holidays and normally resided in another building; defendant waited in his car while the victim went upstairs to get money; and the victim returned later and gave the defendant ninety dollars in exchange for her watch. The State failed to present substantial evidence that violence or fear induced the victim to part with her money and defendant was not indicted for robbery by taking the victim's watch.

APPEAL as of right by the defendant pursuant to N.C.G.S. § 7A-27(a) from judgment imposing a sentence of life imprisonment entered by *Hobgood (Robert H.), J.*, at the 27 April 1987 Criminal Session of Superior Court, ORANGE County. On 13 October 1987, the Supreme Court allowed the defendant's motion to bypass the Court of Appeals on his appeals of convictions for second-degree kidnapping and common law robbery. Heard in the Supreme Court on 13 April 1988.

*Lacy H. Thornburg, Attorney General, by Steven F. Bryant, Assistant Attorney General, for the State.*

*Leland Q. Towns for the defendant-appellant.*

MITCHELL, Justice.

The defendant, Douglas B. Parker, was tried upon separate bills of indictment, proper in form, charging him with first-degree rape, first-degree kidnapping and robbery with a dangerous weapon. The jury returned verdicts finding the defendant guilty of first-degree rape, second-degree kidnapping and common law robbery. Following a sentencing hearing, the trial court entered judgments sentencing the defendant to life imprisonment for first-degree rape and to terms of imprisonment of nine years for second-degree kidnapping and three years for common law robbery.

On appeal to this Court, the defendant raises two assignments of error relating to the guilt-innocence phase of the trial.

The defendant first contends that the trial court erred in denying his motion to exclude the victim's in-court identification of him. Even assuming *arguendo* that the admission of the in-court identification was error, we conclude the error was harmless beyond a reasonable doubt. Next, the defendant argues that the trial court erred in denying his motion to dismiss the robbery charge. We agree.

The State's evidence tended to show, *inter alia*, that the victim, a foreign exchange student, was walking to her dormitory room at the University of North Carolina — Chapel Hill on 27 November 1986 when the defendant abducted her at gunpoint and forced her into the back seat of his car. He made her lie down and cover her head with a coat. The defendant drove around for approximately fifteen minutes before stopping the car on a side road. He entered the back seat with the victim and asked if she had any money or valuables. She told him she had only a watch on a chain around her neck. The defendant took the watch and put it in his pocket. He then ordered the victim to undress and forced her to have sexual intercourse with him. He threatened to kill her if she did not cooperate. The defendant then allowed the victim to dress and told her he would take her back to her dormitory.

The victim testified that she talked to her assailant in an attempt to keep him calm. She told the defendant that the watch he had taken was a gift from her mother and that she would get money from her dormitory room and give it to him in exchange for the watch. They returned to the campus where the victim went to her room, got some money and returned to the parking lot. The defendant drove up beside the victim; she leaned into the car window and handed him the money in exchange for her watch. He then drove away. University police officer, Dorothy Shaner, drove up almost immediately and asked the victim if there was a problem. The victim told her she had just been raped.

The victim was taken to North Carolina Memorial Hospital where a pelvic examination was performed. The examination revealed a small laceration at the posterior of the victim's vagina. Semen found in the victim's vagina was consistent with the defendant's blood group.

During the trial, the victim gave a tentative in-court identification of the defendant. She testified that she had first recognized the defendant as he was being led from the courtroom the preceding day. She further indicated that an employee of the prosecutor's office had pointed out the defendant on the preceding day and that, as a result, she had observed the defendant during pretrial hearings and jury selection.

Officer Dorothy Shaner testified that she was on duty during the early morning hours of 27 November 1986. While on patrol near Craige Dormitory, she saw a car in the parking lot, wrote down the license plate number, and radioed it to the dispatcher. The dispatcher reported that the car was registered to the defendant, Douglas Bernard Parker, at an address in Durham. Officer Shaner then drove up beside the man who was standing outside the car and asked if he was having trouble. The man said that he was lost and needed directions to Durham. Officer Shaner gave him directions and drove away. The conversation took place in an area lighted by street lights along both sides of the street. A short time later, she noticed that the same car had stopped near the sidewalk on Bowles Drive. A woman stepped off the sidewalk and leaned into the car window. After a few minutes, the car drove away. Officer Shaner approached the woman, who said that the man in the car had raped her.

Prior to trial, Officer Shaner was asked by Sergeant Porecca to accompany him to the Durham Police Department to look at some photographs. When they arrived there, they were taken to the detectives' room. As Sergeant Porecca spoke with a detective, Shaner "happened to look down at the desk that was sort of in front of us; and [she] observed some photographs." Shaner picked up a photograph of the defendant and said "that's him." Shaner stated that the desk top was covered with papers, envelopes and other photographs and was "very messy." The photograph of the defendant was not visibly labeled with any markings that would have affected her identification. Shaner also made an unequivocal in-court identification of the defendant. When questioned about the certainty of her identification, she testified that she had no doubt that the defendant was the man she saw the night of the crime.

The defendant took the stand in his own behalf and presented alibi evidence. He denied being on the campus or committing the crimes charged. He testified that his car was sometimes used by family and friends and could be started without a key.

The defendant's girlfriend, Connie Moore, corroborated his testimony. Defense witness, Michelle Davis, testified that the defendant was at a gameroom in Durham at the time the crimes were committed.

[1] By his first assignment of error, the defendant contends that the trial court erred in denying his 29 April 1987 motion to suppress the victim's in-court identification of him. He maintains that the victim's viewing of him in the courtroom during a preliminary hearing amounted to a one-on-one show-up which violated his Sixth Amendment right to counsel and his Fourteenth Amendment right to due process of law.

Prior to trial, a *voir dire* hearing was held to determine the admissibility of the victim's in-court identification. At the hearing, the victim testified that she got glimpses of her assailant's face, but that she did not get a good look at him. She testified that her view was restricted because her head was covered with a coat during part of the ordeal, because it was dark, and because she was sitting in the back seat while he was driving. She candidly admitted that she could not be absolutely certain about her identification.

She also testified that on 5 January 1987 she stopped by the University Police Department and spoke with Officer Porecca who told her that they had arrested a man thought to be her assailant. The victim was shown photographs of five black males. Photograph number two was that of the defendant. The victim was unable to identify the defendant's photograph and, in fact, specifically excluded his photograph.

On cross-examination, the victim testified that she and the prosecutor had visited the courtroom on the Sunday preceding the trial. The prosecutor familiarized the victim with the courtroom and told her where all of the people involved in the trial would be seated. The prosecutor instructed the victim to get a good look at the defendant before testifying. The victim stated that the day before the presentation of evidence began, the de-

fendant was led into the courtroom where she was seated. An employee of the District Attorney's office directed her attention to the defendant because she did not see him enter the courtroom. The victim testified that later the same day, as the defendant was being led from the courtroom, "he turned and looked back and our eyes met." She testified that she recognized him at that moment. The victim candidly admitted that she believed he was the man who had raped her, but that she was not certain. Following the *voir dire* hearing, the trial court denied the defendant's motion to suppress the victim's in-court identification.

Assuming *arguendo* that the identification procedures complained of were improperly suggestive and that this suggestiveness affected the victim's "identification" of the defendant at trial, we conclude, nevertheless, that admission of her in-court identification was harmless beyond a reasonable doubt. *See* N.C.G.S. § 15A-1443(b) (1983). We recognize at the outset that only in the most unusual situations will an erroneously admitted in-court identification of the defendant by the victim be harmless beyond a reasonable doubt. The facts of the present case present such a situation.

In the present case, the record on appeal clearly shows that the victim was never able to positively identify her assailant. When she was questioned about her "identification," she candidly admitted that she could not be "absolutely certain," that "if I'm going to be asked if I can [identify the defendant] beyond doubt, I will say that I can't. I cannot be absolutely certain as I have testified." The victim further testified that prior to trial she had been shown a photographic line-up of five black males. She was unable to identify the defendant's photograph and specifically excluded it from consideration. Although the victim did testify in the presence of the jury that she "believed" the defendant was the man who attacked her, she clearly stated at all times during her testimony that she could not be sure.

The State also presented the testimony of Officer Dorothy Shaner. She testified that she spoke with the defendant on the night in question as he was standing outside of his car. She was able to get a good look at him because the street was well lighted. Officer Shaner unequivocally identified the defendant and stated that she had no doubts that he was the man she had seen.

When we compare the testimony of these two witnesses, we find the positive and unequivocal identifications of the defendant and his car by Officer Shaner juxtaposed against the victim's pretrial rejection of the defendant's photograph as that of her attacker and her acknowledged inability to positively identify the defendant. Given this peculiar state of the evidence, we are confident beyond any reasonable doubt that the jury relied upon Officer Shaner's testimony and that her testimony completely overshadowed the uncertain in-court identification of the victim. We therefore conclude that the admission of the tentative in-court identification of the victim was harmless error, if error at all. This assignment of error is overruled.

[2] By his last assignment of error the defendant contends that the trial court erred in denying his motion to dismiss the robbery charge at the close of the evidence. The defendant was indicted for robbery of the victim by taking "$90.00 in U.S. currency" from her. It was the taking of that money which the State was required to prove in order to convict the defendant for the robbery charged. *See State v. Sparrow,* 276 N.C. 499, 173 S.E. 2d 897 (1970) (fatal variance between allegation and proof); *see also State v. Nunley,* 224 N.C. 96, 29 S.E. 2d 17 (1944) (indictment alleging larceny of money and papers varied fatally from evidence of larceny of two suitcases). We note and emphasize that he was not indicted for robbery by taking the victim's watch. The trial court properly instructed the jury with regard to the offense of robbery by the taking of the victim's money as charged in the bill of indictment, and the jury found the defendant guilty of common law robbery.

Upon the defendant's motion to dismiss, the trial court must determine whether substantial evidence of each essential element of the offense charged has been presented. *State v. Allred,* 279 N.C. 398, 183 S.E. 2d 553 (1971). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith,* 300 N.C. 71, 78-79, 265 S.E. 2d 164, 169 (1980). In ruling upon a defendant's motion to dismiss, "the evidence must be considered in the light most favorable to the State, giving the State every reasonable inference which may be drawn therefrom." *State v. Jerrett,* 309 N.C. 239, 263, 307 S.E. 2d 339, 352 (1983).

"Common law robbery is the felonious, non-consensual taking of money or personal property from the person or presence of another by means of violence or fear." *State v. Smith*, 305 N.C. 691, 700, 292 S.E. 2d 264, 270, *cert. denied*, 459 U.S. 1056, 74 L.Ed. 2d 622 (1982). *Accord State v. Bates*, 313 N.C. 580, 330 S.E. 2d 200 (1985). Robbery has not been committed unless the victim is induced to part with the money or property as a result of such violence or fear. *See State v. Richardson*, 308 N.C. 470, 477, 302 S.E. 2d 799, 803 (1983). The defendant maintains that the State failed to present substantial evidence that violence or fear induced the victim to part with her *money* in the present case. We find merit in this assignment.

The evidence presented through the testimony of the victim tended to show that the defendant took her watch from her by violence or fear. When the defendant was driving the victim back to her dormitory, she told him that the watch had been a gift from her mother and that she would get money from her dormitory room and give it to him in exchange for her watch. The defendant agreed to the exchange. The victim specifically testified that at that time the defendant's gun was no longer in sight, and she did not feel threatened by him. After they arrived at Craige Dormitory, the defendant told her that if she tricked him, "he would come back because he knew where she lived." The victim testified that she did not tell him she was only staying at that dormitory for the holidays or that she normally resided in another building. The defendant waited in the car while the victim went upstairs to get money. She returned later and gave the defendant ninety dollars in exchange for her watch.

Taking the evidence in the light most favorable to the State as we must, we conclude that the State failed to present substantial evidence that violence or fear induced the victim to part with her *money*. Although the evidence tended to show that the defendant took the victim's money, this evidence alone was insufficient to support a conviction for common law robbery. All of the evidence unequivocally tended to show that the victim was not induced to part with her *money* as a result of violence or fear. To the contrary, she clearly testified that no weapon was in sight and she was not afraid at the time she left the defendant in his car and went to her dormitory room to get her money. Neither was there any evidence that violence or fear induced her to give

her money to the defendant when she returned. Instead, the evidence tended to show that she gave the defendant her money at that time in furtherance of her desire to have the watch her mother had given her as a present. Since the State failed to present substantial evidence that the victim was induced to part with her money as a result of violence or fear, there was no substantial evidence of an essential element of common law robbery. Therefore, the trial court erred in denying the defendant's motion to dismiss that charge at the close of the evidence. Accordingly, we hold that the judgment against the defendant for common law robbery must be and is vacated. Otherwise, we find no error in the defendant's trial.

No. 86CRS12496 (first-degree rape)—no error.

No. 86CRS12495 (second-degree kidnapping)—no error.

No. 86CRS12493 (common law robbery)—judgment vacated.