STATE OF NORTH CAROLINA v. MICHAEL CHRISTOPHER WHITE

No. COA99-1557

(Filed 6 February 2001)

**1. Robbery— common law—larceny from person—instruction on lesser included offense not required**

The trial court did not err in a common law robbery case by denying defendant's request for a jury instruction on the lesser included offense of larceny from the person even though defendant contends the State failed to show defendant assaulted his victims, because: (1) the use of force in common law robbery need not be actual, but may be constructive; (2) a reasonable person working as a convenience store clerk alone and in the middle of the night would be afraid of the potential for immediate bodily harm after receiving a note threatening to blow his or her head off; (3) all three victims testified they were not sure whether defendant had access to a weapon; and (4) fear and compliance with the threat were the natural and actual consequences of the victims' receiving the note.

**2. Robbery— common law—requested instruction on assault and show of violence rule not required**

The trial court did not commit reversible error in a common law robbery case by failing to submit defendant's requested instructions on "assault" and the "show of violence" rule, be-

cause: (1) the assault pattern instruction is more descriptive than the pattern instructions on common law robbery in regard to the necessity that the victim have a reasonable fear of immediate bodily harm; (2) the extra description is what defendant was seeking through his second requested jury instruction; and (3) although language from or similar to the assault pattern instruction could have been proper in a common law robbery case, any error in omitting it was harmless in light of the fact that reasonable jurors could not have differed on the issue of whether the victims had a reasonable apprehension of immediate bodily harm.

Appeal by defendant from judgment entered 15 July 1999 by Judge James M. Webb in Guilford County Superior Court. Heard in the Court of Appeals 8 January 2001.

*Attorney General Michael F. Easley, by Assistant Attorney General John P. Scherer II, for the State.*

*J. Scott Coalter, Assistant Public Defender, for defendant-appellant.*

HUDSON, Judge.

Defendant appeals his conviction on three counts of common law robbery. He contends the trial court committed error by denying his request for an instruction to the jury on the lesser included offense of larceny from the person. He also protests the trial judge's refusal to give an instruction stating that "assault on the person" is an element of common law robbery and an instruction defining the "show of violence" rule. We find no error by the trial court.

Evidence at trial tended to show the following: at approximately 2:00 a.m. on 18 January 1999, defendant entered The Pantry convenience store in Greensboro. He browsed the store and eventually approached the check-out counter where store clerk Natt Nwosa stood. Defendant asked Nwosa for a piece of paper and pen so that he could make a list of items to buy, and Nwosa complied with his request. Defendant then passed a note to Nwosa ordering him to surrender the money or get his head blown off. Nwosa testified that when he read the note, he "know [sic] the game was up and anything can go from that moment." When defendant asked him if he would comply, he said, "Okay, no objection." Nwosa opened the cash register, and defendant took the money from it and ordered

Nwosa to lie on the floor. After defendant left, Nwosa called the police. Officer M.A. Wright testified that when he arrived at The Pantry, he found Nwosa to be "very frightened," "shaking," and "talking very fast."

On cross examination, Nwosa testified that during their exchange defendant had one hand on a cell phone, but that he could not tell what defendant was doing with his other hand. Even though defendant never pulled out a gun, Nwosa said he did not know the extent to which defendant was armed, and that "getting [his] head blown off was what [he] was concerned about." Furthermore, even though defendant did not strike him, "[t]here was a threat to do that, so, it could happen any minute from that moment."

Between 3:00 and 3:30 a.m. on 18 January 1999, defendant entered an Exxon station in Greensboro and laid a white envelope on the counter bearing the written message, "Give me the money or I'll blow your head off." Clerk Janet Sherrod testified that she "just read [the note] and [she] just knew he was serious." She opened her register and gave him its contents. He then asked her to open a second register. She told him she needed to get the key to open it, and testified that she "didn't want to make any sudden moves." After she opened the second register, and defendant took the money out of it, he asked her to "Come here," and he kissed her on the jaw. He started to leave the store and again told her, "Come here." He kept saying, "Now," because Sherrod was very scared and did not want to follow him. When they left the store, he told her to get in her car. She did not have the keys, so he told her to go stand by her car. Sherrod testified that she slowly went to her car and stood with her hands up until he drove away. The officer who came to investigate the crime testified at trial that Sherrod was "very nervous and scared" when he arrived at the scene. She told him she did not know whether defendant had a gun.

Later that night, at 3:45 a.m., defendant entered a B.P. Oil station in Greensboro and slid a note across the counter to clerk Robert Darst saying, "Give me all your money or I'll blow your head off." Darst, sixty-three years old, testified that when he saw the note, he "[s]hook a little bit inside." Although he did not see a weapon, he said he "took the threat seriously." He could not tell if defendant had a weapon hidden in his clothing and did not know if there might be someone in defendant's car who had a weapon. It took Darst a little time to open the register due to his nervousness, but he was able to take out the register tray and hand it to defendant. Defendant then

told him to go into the back room, which Darst did, and defendant left the store.

At the 14 July 1999 trial of this case, the court submitted to the jury the pattern instructions for common law robbery. The jury thereafter convicted defendant of three counts of common law robbery. Defendant filed notice of appeal to this Court.

[1] Defendant's first argument on appeal is that the trial court erred in denying his request for a jury instruction on the lesser included offense of larceny from the person. Common law robbery is defined as the non-consensual taking of money or personal property from another by means of violence or fear. *State v. Smith*, 305 N.C. 691, 700, 292 S.E.2d 264, 270, *cert. denied*, 459 U.S. 1056, 74 L. Ed. 2d 622 (1982). Larceny from the person is a lesser included offense of common law robbery. *State v. Young*, 305 N.C. 391, 393, 289 S.E.2d 374, 376 (1982). The only difference between the two crimes is that common law robbery has the additional requirement that the victim be put in fear by the perpetrator. *State v. Buckom*, 328 N.C. 313, 317, 401 S.E.2d 362, 365 (1991).

Defendant contends that the crime of common law robbery includes the element of assault, and the State did not show defendant assaulted his victims. Thus, he is guilty, if anything, of larceny from the person.

Our appellate courts have stated several times that the crime of common law robbery includes an assault on the person. *See, e.g., State v. Hicks*, 241 N.C. 156, 159, 84 S.E.2d 545, 547 (1954); *State v. Griffin*, 57 N.C. App. 684, 686, 292 S.E.2d 156, 158, *cert. denied*, 306 N.C. 560, 295 S.E.2d 477 (1982); *State v. Thompson*, 49 N.C. App. 690, 692, 272 S.E.2d 160, 161 (1980). Assault is an intentional offer or attempt by force or violence to do injury to the person of another which causes a reasonable apprehension of immediate bodily harm. *State v. Thompson*, 27 N.C. App. 576, 577, 219 S.E.2d 566, 567-68 (1975), *disc. review denied*, 289 N.C. 141, 220 S.E.2d 800 (1976). The use of force in common law robbery need not be actual, but may be constructive:

> Actual force implies physical violence. Under constructive force are included "all demonstrations of force, menaces, and other means by which the person robbed is put in fear sufficient to suspend the free exercise of his will or prevent resistance to the taking ... No matter how slight the cause creating the fear may be or

by what other circumstances the taking may be accomplished, if the transaction is attended with such circumstances of terror, such threatening by word or gesture, as in common experience are likely to create an apprehension of danger and induce a man to part with his property for the sake of his person, the victim is put in fear.

*State v. Norris,* 264 N.C. 470, 473, 141 S.E.2d 869, 872 (1965) (citations omitted).

Defendant contends that his handing a note to the convenience store clerks stating, "Give me the money or I'll blow your head off," failed to create a reasonable apprehension of bodily harm on their parts. Specifically, none of the victims saw a firearm in defendant's possession and none could have reasonably believed they were in actual danger. The State, on the other hand, contends there was more than sufficient evidence of constructive force to satisfy the common law robbery requirement that the taking have been accomplished by violence or "putting in fear."

We do not agree with defendant's assertions above. To the contrary, a reasonable person working as a convenience store clerk— alone, and in the middle of the night, no less—would most certainly be afraid of the potential for immediate bodily harm after receiving a note threatening to "blow [his or her] head off." All three of defendant's victims testified they were not sure whether defendant had access to a weapon. The evidence was unequivocal that fear and compliance with the threat were the natural and actual consequences of the victims' receiving the note—a note which clearly threatened to kill them.

"The trial judge must charge on a lesser included offense if: (1) the evidence is equivocal on an element of the greater offense so that the jury could reasonably find either the existence or the nonexistence of this element; and (2) absent this element only a conviction of the lesser included offense would be justified." *State v. Whitaker,* 307 N.C. 115, 118, 296 S.E.2d 273, 274 (1982). In the case before us the State presented unequivocal evidence that defendant took money from his victims without their consent by putting them in fear of being physically harmed; furthermore, no rational trier of fact could have found that the victims' fear of immediate bodily harm was unreasonable under the circumstances. Therefore, the trial judge did not err in refusing to submit an instruction on the lesser included offense of larceny from the person.

**[2]** In a related assignment of error, defendant contends the trial court committed reversible error by failing to submit the following two requested instructions to the jury:

Assault on the person is an element of common law robbery. *State v. Hicks*, 241 N.C. 156, 84 S.E.2d 545 (1954); *State v. Griffin*, 57 N.C. App. 684, 292 S.E.2d 156 (1982).

The "show of violence" rule requires a show of violence accompanied by reasonable apprehension of immediate bodily harm or injury on the part of the person assailed which causes him to engage in a course of conduct which he would not otherwise have followed. *State v. Roberts*, 270 N.C. 655, 155 S.E.2d 303 (1967).

While we agree that the crime of "assault" is apparently a lesser included offense of common law robbery, *see State v. Whitaker*, 307 N.C. 115, 118, 296 S.E.2d 273, 274 (1982), we believe that the first proposed instruction is an oversimplification of the law and potentially confusing. It was not error to refuse to submit this instruction.

Our state's pattern jury instructions describe the elements for assault in a slightly different way than they describe the same elements in the instructions for common law robbery. The "simple assault" pattern instructions include language to the effect that a defendant's "show of force or menace of violence must be sufficient to put a person of reasonable firmness in fear of immediate bodily harm." N.C.P.I., Crim. 208.40 (1996). The pattern instructions on common law robbery, however, include as element six only "that the taking was by violence or by putting the person in fear." N.C.P.I., Crim. 217.10 (1986). Thus, the assault pattern instruction is more descriptive in regard to the necessity that the victim have a *reasonable* fear of *immediate* bodily harm. It appears that this extra description is what the defendant in this case was seeking through his second requested jury instruction.

Although language from or similar to the assault pattern instruction could have been proper in a common law robbery case, any error in omitting it was harmless in this case. As we have previously discussed, we do not believe reasonable jurors could have differed on the issue of whether the defendant's victims had a reasonable apprehension of immediate bodily harm. Clearly, each feared for his or her life, and the circumstances warranted that fear.

In conclusion, the trial judge did not err in his refusal to submit an instruction on the lesser included offense of larceny from

the person. In his refusal to submit an instruction on "assault" or the "show of violence" rule, any error was not prejudicial.

No prejudicial error.

Chief Judge EAGLES and Judge SMITH concur.