STATE OF NORTH CAROLINA v. ROY LEE ELKINS

No. COA10-916

(Filed 1 March 2011)

## 1. Robbery— common law robbery—element of fear—evidence sufficient

The trial court did not err by denying defendant's motion to dismiss a common law robbery charge for insufficient evidence of violence or fear where defendant went into a convenience store and told the cashier he needed $100; defendant hid his arm under his jacket in a manner suggesting that he had a gun; the clerk testified that he knew that defendant was serious because of defendant's eyes; and the clerk gave defendant the money because he was afraid.

## 2. Evidence— convenience store cashier—belief that defendant had gun—first-hand observation

A convenience store cashier's testimony that he believed that defendant was holding a gun under his jacket was rationally based on his firsthand observation of defendant and was more than mere speculation or conjecture. The trial court did not abuse its discretion by admitting the testimony in defendant's robbery prosecution.

## 3. Evidence— leading question—not plain error

There was no plain error in a common law robbery prosecution where the prosecutor was allowed to ask the victim a leading

STATE v. ELKINS

[210 N.C. App. 110 (2011)]

question concerning the element of fear. There was sufficient evidence to support the element of fear or violence without the testimony elicited by the leading question.

**4. Evidence— hearsay—offered to explain subsequent action —other evidence of guilt**

There was no plain error in a common law robbery prosecution where the trial court admitted alleged hearsay testimony from a detective about a jacket that defendant suddenly stopped wearing and about taking defendant to the hospital. These statements were offered to explain the detective's subsequent actions rather than as proof of the matter asserted and were not hearsay; even so, there was other evidence incriminating defendant, including his own written confession.

**5. Evidence— hearsay—offered to explain subsequent actions— no plain error**

There was no plain error in a common law robbery prosecution where the trial court admitted a detective's testimony about a hospital employee's statements. The testimony was admitted to explain the detective's subsequent actions; however, assuming that it was hearsay, there was sufficient uncontested evidence to convict defendant.

**6. Evidence— unauthenticated surveillance photographs— other evidence of guilt**

There was no plain error in admitting hospital surveillance photographs into evidence where the photographs were not properly authenticated but there was plenary uncontested evidence incriminating defendant.

**7. Evidence— officer's opinion of guilt—no prejudice**

There was no plain error in a common law robbery prosecution from the trial court's erroneous admission of a detective's testimony that he was "building a solid case." The statement was an opinion of the ultimate issue of defendant's guilt, but the other evidence incriminating defendant. was such that there was no prejudice.

**8. Damages and Remedies— restitution—evidence not sufficient**

A restitution order in a common law robbery case supported only by the unsworn statement of the prosecutor was vacated.

**STATE v. ELKINS**

[210 N.C. App. 110 (2011)]

Appeal by Defendant from judgment entered 4 December 2009 by Judge James U. Downs in Buncombe County Superior Court. Heard in the Court of Appeals 10 January 2011.

*Roy Cooper, Attorney General, by Steven A. Armstrong, Assistant Attorney General, for the State.*

*William B. Gibson, for defendant-appellant.*

THIGPEN, Judge.

Roy Lee Elkins ("Defendant") appeals from judgment entered 4 December 2009 sentencing him to 107 to 138 months incarceration consistent with the jury's guilty verdict of common law robbery and Defendant's plea of guilty of having attained the status of an habitual felon. We find no error.

The evidence of record tends to show that on 28 January 2009 Defendant entered a Hot Spot convenience store in Asheville, North Carolina. The store cashier, William McHone ("McHone"), saw Defendant go to the restroom and remain there while McHone continued talking with a friend at the front of the store. When McHone's friend left the store, Defendant exited the restroom and approached McHone at the cash register. Defendant said, "I need a hundred dollars," after which McHone laughed, saying "[Yeah], I do, too." Defendant then said, for a second time, "I need a hundred dollars," and McHone "looked at his eyes and . . . knew he was serious." McHone also noticed that Defendant was "hiding his arm" under his jacket, and McHone thought Defendant "had a gun." McHone then opened the cash register and "laid the till down on the counter[,]" allowing Defendant to take the cash. Defendant took the cash from the cash register and left the store.

Defendant was videotaped by the Hot Spot surveillance camera as he approached the cash register, made statements to McHone consistent with McHone's testimony, took money from the cash register, and left the store. Defendant also made a written statement to the police saying the following: "My girlfriend and I are living out of her car. She's been real sick. That night, it was really cold and we didn't have any money. I was afraid she was going to die so I went there and I took that money. I shouldn't have done it, I know."

On 20 February 2009, Defendant was indicted on counts of common law robbery and having attained the status of an habitual felon.

Defendant was tried during the 30 November 2009 session of the Superior Criminal Court of Buncombe County. A jury found Defendant guilty of common law robbery, and Defendant pled guilty to having attained the status of an habitual felon. The court entered judgment on 4 December 2009 sentencing him to 107 to 138 months incarceration consistent with the jury's guilty verdict and Defendant's plea, and ordering restitution in the amount of $59.00. From this judgment, Defendant appeals. We find no prejudicial error in part and vacate in part.

### I: Sufficiency of the Evidence

[1] In Defendant's first argument on appeal, Defendant challenges the trial court's refusal to grant his motion to dismiss predicated on the alleged absence of sufficient evidence that Defendant took money from McHone by means of violence or fear.

When reviewing a challenge to the denial of a defendant's motion to dismiss a charge on the basis of insufficiency of the evidence, this Court determines "whether the State presented 'substantial evidence' in support of each element of the charged offense." *State v. Chapman*, 359 N.C. 328, 374, 611 S.E.2d 794, 827 (2005) (quotation omitted). " 'Substantial evidence is relevant evidence that a reasonable person might accept as adequate, or would consider necessary to support a particular conclusion.' " *State v. Abshire*, 363 N.C. 322, 328, 677 S.E.2d 444, 449 (2009) (quoting *State v. McNeil*, 359 N.C. 800, 804, 617 S.E.2d 271, 274 (2005)). "In this determination, all evidence is considered in the light most favorable to the State, and the State receives the benefit of every reasonable inference supported by that evidence." *Id.* Additionally, a "substantial evidence inquiry examines the sufficiency of the evidence presented but not its weight," which remains a matter for the jury. *McNeil*, 359 N.C. at 804, 617 S.E.2d at 274. Thus, "[i]f there is substantial evidence—whether direct, circumstantial, or both—to support a finding that the offense charged has been committed and that the defendant committed it, the case is for the jury and the motion to dismiss should be denied." *Id.*

The elements of common-law robbery are "the felonious, non-consensual taking of money or personal property from the person or presence of another by means of violence or fear." *State v. Smith*, 305 N.C. 691, 700, 292 S.E.2d 264, 270, *cert. denied*, 459 U.S. 1056, 74 L. Ed. 2d 622, 103 S. Ct. 474 (1982) (citation omitted). "The force element required for common law robbery requires violence or fear 'sufficient to compel the victim to part with his property' " or " 'to

prevent resistance to the taking.' " *State v. Williams*, —— N.C. App. ——, ——, 689 S.E.2d 412, 424 (2009) (quoting *State v. Sipes*, 233 N.C. 633, 635, 65 S.E.2d 127, 128 (1951), *State v. Sawyer*, 224 N.C. 61, 65, 29 S.E.2d 34, 37 (1944)). "[I]t is not necessary to prove both violence and putting in fear—proof of either is sufficient." *Sawyer*, 224 N.C. at 65, 29 S.E.2d at 37.

The element of force, which requires proof of a taking either by violence or putting the victim in fear, may be "actual or constructive." *Sipes*, 233 N.C. at 635, 65 S.E.2d at 128. " 'Constructive force' includes all demonstrations of force, menaces, and other means by which the person robbed is put in fear sufficient to suspend the free exercise of his will or prevent him from resisting the taking." *Id.*

> No matter how slight the cause creating the fear may be or by what other circumstances the taking may be accomplished, if the transaction is attended with such circumstances of terror, such threatening by word or gesture, as in common experience are likely to create an apprehension of danger and induce a man to part with his property for the sake of his person, the victim is put in fear.

*Sawyer*, 224 N.C. at 65, 29 S.E.2d at 37. The Supreme Court has also noted "that the word 'fear' . . . in the definition of common-law robbery is not confined to fear of death[,]" and "the use or threatened use of a firearm or other dangerous weapon is not an essential of common-law robbery." *State v. Moore*, 279 N.C. 455, 458, 183 S.E.2d 546, 547-48 (1971).

In the case *sub judice*, McHone testified at trial with regard to the common law robbery element of violence or fear, stating that a man came into the convenience store and walked "toward the restroom." McHone "just went on with [his] work and started talking . . . to a friend of mine." When McHone's friend left the store, "the guy [came] out of the restroom and [walked] up to me," demanding, " 'I need a hundred dollars[.]' " At first, McHone "started laughing" because McHone "thought he was joking." However, the man again demanded, " 'I . . . need a hundred dollars.' " This time, McHone "looked at his eyes and . . . I knew he was serious." When asked specifically, "What about his eyes?" McHone responded, "They looked evil looking. . . . [I]t was just like he meant it[;] [y]ou know how you get mad and angry at somebody and you mean something[,] . . . [y]our eyes can tell the story." McHone also noticed that the man "had [his hand] under his jacket[,]" and McHone "thought he . . . might have had a gun or some-

thing[.]" McHone repeated, "I thought that he had a gun under his jacket" because "he was hiding his arm." "I knew he was trying to rob me," McHone said. The man "[h]ad his arm under [the] jacket there[,] [and] . . . I thought it was a gun." After the man's second demand for one-hundred dollars, McHone "went to the cash register[,]" "opened it up[,]" and "laid the till down on the counter [to] let him get the money[.]" McHone said he took the money and left the store. When specifically asked, "based on your fear that he may have . . . a gun, is that when you gave him the money?" McHone answered, "That's right. That's right."

Defendant argues that *State v. Parker*, 322 N.C. 559, 369 S.E.2d 596 (1988), is binding authority. We disagree. In *Parker*, the evidence surrounding the alleged common law robbery tended to show the victim was abducted at gunpoint and forced into the back seat of the defendant's car. *Id.*, 322 N.C. at 561, 369 S.E.2d at 597. When the defendant asked "if [the victim] had any money or valuables[,] [s]he told him she had only a watch on a chain around her neck[,]" which the defendant took. *Id.*, 322 N.C. at 561, 369 S.E.2d at 597-98. The defendant then returned the victim to her dormitory, at which point the victim testified "she talked to her assailant in an attempt to keep him calm."

> She told the defendant that the watch he had taken was a gift from her mother and that she would get money from her dormitory room and give it to him in exchange for the watch. They returned to the campus where the victim went to her room, got some money and returned to the parking lot. The defendant drove up beside the victim; she leaned into the car window and handed him the money in exchange for her watch. He then drove away.

*Id.*, 322 N.C. at 561, 369 S.E.2d at 598. The Court concluded there was insufficient evidence of the element of violence or fear, reasoning:

> All of the evidence unequivocally tended to show that the victim was not induced to part with her money as a result of violence or fear. To the contrary, she clearly testified that no weapon was in sight and she was not afraid at the time she left the defendant in his car and went to her dormitory room to get her money. Neither was there any evidence that violence or fear induced her to give her money to the defendant when she returned.

*Id.*, 322 N.C. at 566-67, 369 S.E.2d at 601. *Parker* is distinguishable from this case in several ways. At the time the victim in *Parker* gave

the defendant her money, there was no weapon in sight, and the victim in *Parker* "testified . . . she was not afraid" when she left the defendant's car. In the case *sub judice*, McHone testified that Defendant was "hiding his arm" under his jacket, and McHone thought Defendant "had a gun." Moreover, McHone's testimony indicates he gave Defendant the money from the cash register because "[Defendant] may have . . . a gun[.]"

We find the opinion, *State v. White*, 142 N.C. App. 201, 542 S.E.2d 265 (2001), instructive here. In *White*, the Court concluded there was sufficient evidence of the element of violence or fear when the defendant handed a threatening note to the convenience store clerks implying the defendant had a gun, even though "none of the victims saw a firearm in defendant's possession." *Id.*, 142 N.C. App. at 205, 542 S.E.2d at 268. In the case *sub judice*, the manner in which Defendant kept his arm under his jacket implied Defendant was hiding a weapon; congruently, McHone believed Defendant had a gun under his jacket. We see no material difference between (1) the defendant in *White* indicating he had a weapon by passing a note, and (2) Defendant in this case indicating he had a weapon by hiding his arm under his jacket in a manner suggesting he had a gun. Furthermore, McHone indicates he gave Defendant the money from the cash register because he thought "[Defendant] may have . . . a gun[.]" *See Williams*, —— N.C. App. at ——, 689 S.E.2d at 424 (stating that "[t]he force element required for common law robbery requires violence or fear sufficient to compel the victim to part with his property [or] . . . to prevent resistance to the taking"). Lastly, even though the evidence here tends to show that McHone believed Defendant had a gun, we reiterate that this belief was not necessary to establish the force element of common law robbery: "[T]hreatened use of a firearm or other dangerous weapon is not an essential of common-law robbery." *Moore*, 279 N.C. at 458, 183 S.E.2d at 548.

Based on this Court's opinion in *White*, 142 N.C. App. 201, 542 S.E.2d 265, and its application to the facts of this case, we believe that McHone's testimony, which indicated that (1) Defendant hid his arm underneath his jacket in a manner suggesting that Defendant had a gun; (2) McHone knew Defendant was "serious" because his eyes were "evil looking"; (3) and that McHone was afraid and therefore gave Defendant the money from the cash register, is sufficient evidence to support the element of violence or fear. We conclude that this argument on appeal is without merit.

STATE v. ELKINS

[210 N.C. App. 110 (2011)]

II: Speculative Testimony

[2] In Defendant's second argument on appeal, he contends the court abused its discretion in allowing testimony that constituted mere speculation. We disagree.

N.C. Gen. Stat. § 8C-1, Rule 602 (2009), states, in pertinent part, the following: "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter[.]" Accordantly, "[t]estimony that is mere speculation is inadmissible." *State v. Garcell*, 363 N.C. 10, 36, 678 S.E.2d 618, 635 (2009).

Pursuant to N.C. Gen. Stat. § 8C-1, Rule 701 (2009), "a lay witness may testify as to his or her opinion, provided the opinion is rationally based upon his or her perception and is helpful to the jury's understanding of the testimony" or the determination of a fact in issue. *State v. Anthony*, 354 N.C. 372, 411, 555 S.E.2d 557, 583 (2001), *cert. denied*, 536 U.S. 930, 153 L. Ed. 2d 791, 122 S. Ct. 2605 (2002). "[P]ersonal knowledge is not an absolute but may consist of what the witness thinks he knows from personal perception." *State v. Wright*, 151 N.C. App. 493, 495, 566 S.E.2d 151, 153 (2002) (quotation omitted). In certain cases, "statements, while reflecting either poor memory or indistinct perception, are nonetheless competent and admissible because they were rationally based on the firsthand observation of the witness, rather than mere speculation or conjecture." *State v. Davis*, 77 N.C. App. 68, 73, 334 S.E.2d 509, 512 (1985) (citing *State v. Joyner*, 301 N.C. 18, 24, 269 S.E.2d 125, 129 (1980)).

"The standard of review for this Court assessing evidentiary rulings is abuse of discretion." *State v. Boston*, 165 N.C. App. 214, 218, 598 S.E.2d 163, 166 (2004) (citing *State v. Meekins*, 326 N.C. 689, 696, 392 S.E.2d 346, 350 (1990)).

In this case, McHone gave the following testimony:

A:   . . . I thought that he had a gun under his jacket, is the reason why he was hiding his arm.

Defense Counsel: Objection. Speculation.

The Court: Overruled. . . .

A:   And that's the reason why I went over to the cash register and opened the cash register and laid the till down on the counter because I knew he was trying to rob me, you know. Had his

arm under jacket there. I mean, I thought it was a gun. I—like you say, it's speculation but I don't know.

We find *Davis*, 77 N.C. App. 68, 334 S.E.2d 509 instructive here. In *Davis*, this Court stated that an "indistinct perception," may be "competent and admissible" if that perception is "rationally based on the firsthand observation of the witness, rather than mere speculation or conjecture." *Id.*, 77 N.C. App. at 73, 334 S.E.2d at 512. In *Davis*, the following testimony of an eye-witness was alleged by the defendant to be speculation:

When asked by the State where she saw the defendant go upon his arrival at the motel, she answered, "I would say what looks like room fifty-one." . . . The witness, as a resident of Room 41, had earlier testified she knew where Room 51 was in reference to her own room.

*Id.*, 77 N.C. App. at 72, 334 S.E.2d at 512. The Court held that "[b]ased on her observations, her response was properly admitted as a 'natural and instinctive inference' or 'instantaneous conclusions . . . derived from observation of a variety of facts presented to the senses at one and the same time.'" *Id.*, 77 N.C. App. at 72, 334 S.E.2d at 512 (quoting *Joyner*, 301 N.C. at 23, 269 S.E.2d at 129). The Court in *Davis* further examined the following testimony by the same eye-witness: "[W]hen asked whether defendant entered Room 51" the eye-witness stated, "I presume because I heard . . . [and] [s]aw him . . . shut the door or whatever." *Id.*, 77 N.C. App. at 73, 334 S.E.2d at 512. The Court in *Davis* concluded that "[t]hese statements, while reflecting either poor memory or indistinct perception, are nonetheless competent and admissible because they were rationally based on the firsthand observation of the witness, rather than mere speculation or conjecture." *Id.*

Here, based on McHone's observation of Defendant, McHone believed Defendant had a gun because Defendant was "hiding his arm" under his jacket. We believe that McHone's perception, although indistinct, because McHone did not know with certainty that Defendant had a gun, was nonetheless rationally based on McHone's firsthand observation of Defendant and is more than mere speculation or conjecture. For the foregoing reasons, we conclude the evidence in question was admissible, and that the trial court did not err, and certainly did not abuse its discretion, by allowing McHone's testimony that he believed Defendant had a gun under his jacket.

STATE v. ELKINS

[210 N.C. App. 110 (2011)]

## III: Leading Questions

**[3]** In Defendant's third argument on appeal, he contends the court committed plain error in allowing testimony that was derived from leading questions by the prosecutor. We disagree.

Rule 10(a)(4) of the North Carolina Rules of Appellate Procedure governs this Court's review of matters employing the plain error standard: "In criminal cases, an issue that was not preserved by objection noted at trial . . . nevertheless may be made the basis of an issue presented on appeal when the judicial action questioned is specifically and distinctly contended to amount to plain error."[1]

Plain error analysis applies to evidentiary matters and jury instructions. *State v. Cummings*, 361 N.C. 438, 469, 648 S.E.2d 788, 807 (2007), *cert. denied*, 552 U.S. 1319, 128 S. Ct. 1888, 170 L. Ed. 2d 760 (2008). "A reversal for plain error is only appropriate in the most exceptional cases." *State v. Raines*, 362 N.C. 1, 16, 653 S.E.2d 126, 136 (2007), *cert. denied*, —— U.S. ——, 174 L. Ed. 2d 601, 129 S. Ct. 2857 (quotation omitted). "The plain error rule is critical in the context of admitting physical evidence or testimony without an objection because the trial court is not expected to second-guess a party's trial strategy[;] [t]he possibility always exists that a party intentionally declines to object for some strategic reason." *State v. Garcell*, 363 N.C. 10, 35, 678 S.E.2d 618, 634, *cert. denied*, —— U.S. ——, 175 L. Ed. 2d 362, 130 S. Ct. 510 (2009) (citing *State v. Black*, 308 N.C. 736, 740, 303 S.E.2d 804, 806 (1983)). To show plain error, the " 'defendant must convince this Court not only that there was error, but that absent the error, the jury probably would have reached a different result,' " *State v. Allen*, 360 N.C. 297, 310, 626 S.E.2d 271, 282, *cert. denied*, 549 U.S. 867, 166 L. Ed. 2d 116, 127 S. Ct. 164 (2006) (quoting *State v. Haselden*, 357 N.C. 1, 13, 577 S.E.2d 594, 602, *cert. denied*, 540 U.S. 988, 157 L. Ed. 2d 382, 124 S. Ct. 475 (2003)); or we must be convinced that any error was so "fundamental" that it caused "a miscarriage of justice." *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (quotation omitted).

N.C. Gen. Stat. § 8C-1, Rule 611(c) (2009), provides, in pertinent part, that "[l]eading questions should not be used on the direct examination of a witness except as may be necessary to develop his testimony."

---

1. Primarily, we note that Defendant did not object at trial to the admission of the evidence admitted through alleged leading questions. Therefore, plain error review is appropriate.

On appeal, Defendant specifically challenges the admission of the following evidence, even though Defendant failed to lodge an objection at trial:

Q: And based on your fear that he may have—that he may have a gun, is that when you gave him the money?

A: That's right. That's right.

The essence of Defendant's argument is, assuming this Court concluded there was sufficient evidence to support the violence or fear element of common law robbery, the sufficiency of the evidence must necessarily hinge on the foregoing leading question and inadmissible elicited response from McHone. We find Defendant's argument unpersuasive due to other evidence of record tending to satisfy the violence or fear element of common law robbery.

In the case *sub judice*, McHone believed Defendant threatened him by gesture; more specifically, McHone believed Defendant hid his arm underneath his jacket to conceal a gun. Moreover, McHone said Defendant was "serious" and his eyes were "evil looking." The evidence also shows that McHone did, in fact, part with the money from Hot Spot's cash register after Defendant twice demanded one-hundred dollars while ostensibly concealing a gun. *See Williams*, —— N.C. App. at ——, 689 S.E.2d at 424 (stating that "[t]he force element required for common law robbery requires violence or fear sufficient to compel the victim to part with his property [or] . . . to prevent resistance to the taking"). We believe the foregoing evidence was sufficient evidence to support the element of violence and fear without the testimony elicited by the above leading question containing the word "fear." For that reason, any error the trial court may have made by allowing the admission of the leading question does not amount to plain error, as the trial was not prejudiced. This assignment of error is overruled.

## IV: Plain Error

In Defendant's next argument on appeal, he contends that the admission of a series of evidence and testimony during the examination of Detective Janice Hawkins ("Hawkins"), including (1) alleged hearsay testimony by Hawkins regarding statements by Andy Edwards ("Edwards") and a hospital employee, (2) photographs allegedly admitted without authentication or identification, and (3) Hawkins' testimony that she "felt like [she] was building a solid case," constituted plain error.

Defendant did not object at trial to the admission of this evidence. Therefore, these errors will be reviewed applying the plain error standard. As we have previously stated, to show plain error, " 'defendant must convince this Court not only that there was error, but that absent the error, the jury probably would have reached a different result,' " *Allen*, 360 N.C. at 310, 626 S.E.2d at 282, or we must be convinced that any error was so "fundamental" that it caused "a miscarriage of justice." *Odom*, 307 N.C. at 660, 300 S.E.2d at 378.

## A: Hearsay

" 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial, or hearing, offered in evidence to prove the truth of the matter asserted." N.C. Gen. Stat. § 8C-1, Rule 801(c) (2009). "[O]ut-of-court statements that are offered for purposes other than to prove the truth of the matter asserted are not considered hearsay." *State v. Call*, 349 N.C. 382, 409, 508 S.E.2d 496, 513 (1998). "[S]tatements are not hearsay if they are made to explain the subsequent conduct of the person to whom the statement was directed." *State v. Gainey*, 355 N.C. 73, 87, 558 S.E.2d 463, 473 (2002) (citation omitted).

## i: Andy Edwards

[4] Defendant first challenges the following testimony given by Hawkins regarding statements made by Edwards in the course of Hawkins' investigation:

> And [Edwards] said that . . . Roy always wore that jacket and then at one—one night, you know, he just decided not to wear that jacket any more and he asked to borrow one of Andy's jackets. He said he had not worn that jacket any more. It was right around the time he thought he'd seen the news. I said okay. He also said that . . . he thought that Roy had come down to Asheville during that time because his girlfriend was sick. And so Andy told me that Roy took his girlfriend down to Asheville to the hospital and then he—and they came back a day or so later and it was all in this time that it was on the news. He just knew it was Roy because all that seemed to fit for Mr. Edwards in his mind.

We believe the foregoing statements were not offered to prove the truth of the matter asserted, but rather to explain Hawkins' subsequent actions. *Gainey*, 355 N.C. at 87, 558 S.E.2d at 473 (holding that "statements are not hearsay if they are made to explain the subsequent conduct of the person to whom the statement was directed").

After Hawkins spoke with Edwards, Hawkins asked for and received Defendant's jacket as evidence; Hawkins also subsequently went to the hospital in Asheville for the purpose of obtaining a surveillance video as further evidence in this case. The statement explains the subsequent conduct of Hawkins after speaking with Edwards. Accordingly, this testimony was proper nonhearsay evidence, and the trial court did not err in admitting it.

Assuming *arguendo* the foregoing evidence did constitute hearsay, the error of its admission would not have reached the level of plain error, as other evidence incriminating Defendant, including evidence of a surveillance video from Hot Spot and Defendant's own written statement of confession, was plenary.

### ii: Hospital Employee

[5] Defendant also challenges the admission of an alleged hearsay statement by Hawkins, who stated that a hospital employee "indicated . . . they did see this person (Defendant) on video." Again, we believe this statement was not offered to prove the truth of the matter asserted, but rather to explain Hawkins' subsequent actions. *Gainey*, 355 N.C. at 87, 558 S.E.2d at 473. The statement was offered to show why Hawkins obtained a search warrant to procure the hospital surveillance video as evidence. Accordingly, this testimony was proper nonhearsay evidence, and the trial court did not err in admitting it. Again, assuming *arguendo* the foregoing statement was inadmissible hearsay, the uncontested and plenary evidence incriminating Defendant was sufficient to convict Defendant, such that the admission of this statement did not amount to plain error.

### B: Photograph Authentication

[6] In his next argument on appeal, Defendant contends the trial court erred in allowing the State to introduce three photographs, which were part of the hospital surveillance video, because the photographs were not properly authenticated.

N.C. Gen. Stat. § 8-97 (2009), provides that "[a]ny party may introduce a photograph, video tape, motion picture, X-ray or other photographic representation as substantive evidence upon laying a proper foundation and meeting other applicable evidentiary requirements[;] [t]his section does not prohibit a party from introducing a photograph or other pictorial representation solely for the purpose of illustrating the testimony of a witness." The proper foundation for a videotape may be shown by:

(1) testimony that the motion picture or videotape fairly and accurately illustrates the events filmed (illustrative purposes); (2) "proper testimony concerning the checking and operation of the video camera and the chain of evidence concerning the videotape . . ."; (3) testimony that "the photographs introduced at trial were the same as those [the witness] had inspected immediately after processing," (substantive purposes); or (4) "testimony that the videotape had not been edited, and that the picture fairly and accurately recorded the actual appearance of the area 'photographed.' "

*State v. Smith*, 152 N.C. App. 29, 38, 566 S.E.2d 793, 800, *cert. denied*, 356 N.C. 311, 571 S.E.2d 208 (2002) (quoting *State v. Cannon*, 92 N.C. App. 246, 254, 374 S.E.2d 604, 608-09 (1988), *rev'd on other grounds*, 326 N.C. 37, 387 S.E.2d 450 (1990)).

Here, the trial court allowed the admission of the photographs derived from a hospital surveillance video into evidence without objection from Defendant. In fact, the court specifically asked counsel for defense if there was "any objection," to which counsel responded, "No, Your Honor." However, a review of the transcript shows the photographs were not authenticated by any mechanism of proper foundation provided in *Smith*, 152 N.C. App. 29, 566 S.E.2d 793. Hawkins did not testify that the photographs accurately portrayed what she had observed, because Hawkins did not observe Defendant in the hospital at the time the surveillance video captured images of Defendant. Hawkins subsequently obtained and viewed the hospital surveillance videos in the course of her investigation of Defendant as a suspect. Therefore, Hawkins was unqualified to testify that the photographs accurately portrayed Defendant in the hospital, such that the photographs were properly authenticated for illustrative purposes: Hawkins had made no such observation. *Compare, State v. Alston*, 91 N.C. App. 707, 713, 373 S.E.2d 306, 311 (1988) (holding that because "[t]he officer clearly indicated that the photographs accurately portrayed what he had observed[,] . . . the photographs were properly authenticated for illustrative purposes"); *State v. Gaither*, 161 N.C. App. 96, 102-03, 587 S.E.2d 505, 509 (2003), *disc. review denied*, 358 N.C. 157, 593 S.E.2d 83 (2004) (holding a videotape properly authenticated for illustrative purposes when "a television news crew [recorded] . . . the K-9 unit search for the weapon" and the videotape "illustrat[ed] the testimony of the K-9 officer"). We agree with Defendant that the photographs were not properly authenticated. This conclusion notwithstanding, the plenary uncontested evidence incriminating Defendant, including the Hot Spot surveillance video,

the testimony of McHone, and Defendant's own statement of confession, was such that the admission of these three photographs depicting Defendant in a hospital were not prejudicial to Defendant's trial. Therefore, the trial court did not commit plain error in admitting the photographs into evidence.

### C: Opinion Testimony

[7] Defendant next contends that a statement by Hawkins on direct examination constituted an inadmissible opinion by a lay witness in violation of N.C. Gen. Stat. § 8C-1, Rule 701 (2009), and "invaded the province of the jury."

Rule 701 provides the following: "If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue." However, N.C. Gen. Stat. § 8C-1, Rule 704 (2009), provides that "[t]estimony in the form of an opinion or inference is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."

Rule 704 "does allow admission of lay opinion evidence onultimate issues, but to qualify for admission the opinion must be helpful to the jury." *Mobley v. Hill*, 80 N.C. App. 79, 86, 341 S.E.2d 46, 50 (1986) (citing N.C. Gen. Stat. § 8C-1, Rule 701). " '[M]eaningless assertions which amount to little more than choosing up sides' are properly excludable as lacking helpfulness under the Rules." *Hill*, 80 N.C. App. at 86, 341 S.E.2d at 50. Furthermore, "while opinion testimony may embrace an ultimate issue, the opinion *may not* be phrased using a legal term of art carrying a specific legal meaning not readily apparent to the witness." *State v. Najewicz*, 112 N.C. App. 280, 293, 436 S.E.2d 132, 140 (1993), *disc. review denied*, 335 N.C. 563, 441 S.E.2d 130 (1994) (citing *State v. Rose*, 327 N.C. 599, 602-04, 398 S.E.2d 314, 315-17 (1990)).

In our analysis of this case, we must first ask whether the statement at issue was inadmissible pursuant to Rule 701 and Rule 704. If it was error to allow the statement's admission, we must then determine whether that error constituted plain error. Defendant argues that the following testimony was impermissible lay opinion testimony:

Q: . . . Now Detective Hawkins, after you received this information from the hospital, what were your next steps? Were you building a case at this point?

A: I felt like I was building a solid case. Mr. Elkins was, indeed, the offender in this case.

We find the opinion in *State v. Carrillo*, 164 N.C. App. 204, 595 S.E.2d 219 (2004), *appeal dismissed, disc. review denied*, 359 N.C. 283, 610 S.E.2d 710 (2005), instructive here. In *Carrillo*, a policeman gave testimony regarding his opinion of the defendant's guilt, which was elicited by counsel for defense, and to which the defendant did not object. Specifically, the policeman responded to the question of whether the defendant might have been an "unwilling participant in the transfer of drugs," by saying, "No, because you're talking about $28,000.00 street value worth of cocaine. . . . I think your client knew what was in that package." *Id.*, 164 N.C. App. at 209, 595 S.E.2d at 223. Moreover, in the same case, a U.S. Customs Agent gave testimony regarding his opinion of the defendant's guilt by explaining, "[the] defendant dropped his head, stared at the ground, and 'would not answer' when asked . . . who had provided him with a fictitious Social Security Card[,]" and because of his reaction, "I think he realized he had been caught." *Id.*, 164 N.C. App. at 209-10, 595 S.E.2d at 223. He reiterated that "[m]y opinion is that he realized he was caught and that he couldn't bluff or lie his way out of it." *Id.*, 164 N.C. App. at 210, 595 S.E.2d at 223.

The Court in *Carrillo* concluded "that the trial court erred in allowing the officers to offer their opinions of whether defendant was guilty." *Id.*, 164 N.C. App. at 210, 595 S.E.2d at 223 (citing *State v. Fleming*, 350 N.C. 109, 126, 512 S.E.2d 720, 732, *cert. denied*, 528 U.S. 941, 145 L. Ed. 2d 274, 120 S. Ct. 351 (1999)). However, the Court further concluded that "[a]lthough it was error to allow the law enforcement officers to provide their opinions regarding defendant's guilt, defendant has failed to show that without this testimony the jury would have reached a different verdict." *Id.*, 164 N.C. App. at 211, 595 S.E.2d at 224. Therefore, the error did not constitute plain error.

While we note that Rule 704 "does allow admission of lay opinion evidence on ultimate issues," *Hill*, 80 N.C. App. at 86, 341 S.E.2d at 50 (1986), Rule 701 requires that, "to qualify for admission[,] the opinion [evidence] must be helpful to the jury." *Id.* (citing N.C. Gen. Stat. § 8C-1, Rule 701). Here, we do not believe that the statement, "I felt like I was building a solid case[;] Mr. Elkins was, indeed, the offender

in this case," is helpful, pursuant to Rule 701, to the "determination of a fact in issue." Rather, the foregoing statement is solely and simply an opinion of the ultimate issue of Defendant's guilt, and as such, the statement's admission was error.

However, given that Defendant did not object to the admission of the testimony at trial, and because Defendant's failure to object necessitates that we review for plain error, we cannot conclude that "absent the error, the jury probably would have reached a different result,' " *Allen*, 360 N.C. at 310, 626 S.E.2d at 282, or that the error was so "fundamental" that it caused "a miscarriage of justice." *Odom*, 307 N.C. at 660, 300 S.E.2d at 378. The plenary evidence incriminating Defendant, including the surveillance video from the convenience store, McHone's testimony, and Defendant's own statement of confession, was such that the admission of Hawkins' statement did not prejudice Defendant's trial. *See Carrillo*, 164 N.C. App. at 211, 595 S.E.2d at 224. Therefore, even though the admission of the statement was error, we conclude it was not plain error.[2]

## V: Restitution

[8] In Defendant's final argument on appeal, he contends that the $59.00 restitution order was not supported by the evidence adduced at trial or at sentencing. We agree.

Primarily, we note that Defendant did not object to the restitution order at trial. In *State v. Shelton*, 167 N.C. App. 225, 605 S.E.2d 228 (2004), this Court reasoned that "[w]hile defendant did not specifically object to the trial court's entry of an award of restitution, this issue is deemed preserved for appellate review under N.C. Gen. Stat. § 15A-1446(d)(18)." *Id.*, 167 N.C. App. at 233, 605 S.E.2d at 233 (citing *State v. Reynolds*, 161 N.C. App. 144, 149, 587 S.E.2d 456, 460 (2003)).

"[T]he amount of restitution recommended by the trial court must be supported by evidence adduced at trial or at sentencing." *Id.* (citing *State v. Wilson*, 340 N.C. 720, 726, 459 S.E.2d 192, 196 (1995)).

2. Defendant also cites *Taylor v. Kentucky*, 436 U.S. 478, 56 L. Ed. 2d 468, 98 S.Ct. 1930 (1978), *State v. White*, 331 N.C. 604, 419 S.E.2d 557 (1992), and *State v. Canady*, 355 N.C. 242, 559 S.E.2d 762 (2002), for the proposition that the cumulative effect of the potentially damaging and erroneous admissions of evidence violated Defendant's due process and deprived Defendant of a fair trial. This concern was not raised at the trial, and therefore we must apply the prejudice standard as we have done in the corpus of the opinion. *See State v. Elam*, 302 N.C. 157, 160-61, 273 S.E.2d 661, 664 (1981) (stating that the Court will not review constitutional questions "not raised or passed upon in the trial court").

"The unsworn statement of the prosecutor is insufficient to support the amount of restitution ordered." *Id.* (citing *State v. Buchanan*, 108 N.C. App. 338, 423 S.E.2d 819 (1992)). However, "[i]ssues at a sentencing hearing may be established by stipulation of counsel if that stipulation is definite and certain." *State v. Mumford*, 364 N.C. 394, 403, 699 S.E.2d 911, 917 (2010) (quotation omitted).

Here, the prosecutor made the following unsworn statement: "We do have a—in regards to the common law robbery, we have the restitution to the Hot Spot in the amount of $59." No other evidence was presented during sentencing with regard to restitution. Defendant did not object to the foregoing amount of restitution; however, neither is there any evidence of record that Defendant stipulated to the foregoing amount. Essentially, the sole evidence supporting the restitution order of $59.00 is the unsworn statement of the prosecutor. This alone is insufficient to support the amount of restitution ordered. *See Shelton*, 167 N.C. App. at 233, 605 S.E.2d at 233 (stating that "[an] unsworn statement of the prosecutor is insufficient to support the amount of restitution ordered").

For the foregoing reasons, we conclude that Defendant had a fair trial, free from prejudicial error, with the exception of the restitution recommended. Consequently, the portion of the judgment recommending restitution in the amount of $59.00 is vacated.

NO ERROR, in part, VACATED, in part.

Chief Judge MARTIN and Judge ROBERT C. HUNTER concur.