*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 14a0002p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT
_____

UNITED STATES OF AMERICA,
                    *Plaintiff-Appellee,*

          *v.*                                                    No. 12-2438

GEORGE EDWARD COVINGTON III,
                    *Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:12-cr-00088-1—Paul Lewis Maloney, Chief District Judge.

Argued: October 3, 2013

Decided and Filed:  January 6, 2014

Before:  ROGERS, STRANCH, and DONALD, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Geoffrey Upshaw, LAW OFFICE OF GEOFFREY UPSHAW, Kalamazoo, Michigan, for Appellant.  Sally J. Berens, UNITED STATES ATTORNEY'S OFFICE, Grand Rapids, Michigan, for Appellee.  **ON BRIEF:** Geoffrey Upshaw, LAW OFFICE OF GEOFFREY UPSHAW, Kalamazoo, Michigan, for Appellant.  Sally J. Berens, UNITED STATES ATTORNEY'S OFFICE, Grand Rapids, Michigan, for Appellee.

          DONALD, J., delivered the opinion of the court, in which ROGERS and STRANCH, JJ., joined.  STRANCH, J. (pg. 12), delivered a separate concurrence.

_____

**OPINION**

_____

          BERNICE B. DONALD, Circuit Judge.    Defendant-Appellant, George Covington, III, appeals the district court's designation of his prior conviction for prison escape under Michigan Compiled Laws section 750.193 as a "crime of violence" for purposes of a career offender sentence enhancement under § 4B1.1 of the United States

1

Sentencing Guidelines. Because an offense of breaking and escaping prison under section 750.193 does not present the same "serious potential risk of physical injury to another" as the offenses enumerated in § 4B1.2(a)(2) of the Sentencing Guidelines, we REVERSE the district court's determination and REMAND for resentencing.

I.

On May 25, 2012, George Covington, III ("Covington") pled guilty to possession of a firearm in furtherance of a drug trafficking crime under 18 U.S.C. § 924(c) and possession of cocaine base with intent to distribute under 21 U.S.C. § 841(a). The United States Probation Department recommended sentencing Covington as a career offender pursuant to § 4B1.1 of the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") based on two prior felony convictions. Covington filed an objection to the presentence report ("PSR"), arguing that his prior felony conviction for prison escape under Michigan Compiled Laws section 750.193 did not qualify as a crime of violence under the Guidelines.

The district court heard arguments on Covington's objection to the PSR at sentencing and overruled the objection. Applying the Supreme Court's risk levels analysis from *Sykes v. United States*, 131 S. Ct. 2267, 2273 (2011), the district court then found that Covington's prior conviction for prison escape under section 750.193 presented risks similar enough to the offense of burglary, enumerated in § 4B1.2(a)(2), to qualify as a crime of violence because it is a "stealth crime" with a risk of discovery, likely to cause "an eruption of violence."

Accordingly, the district court applied the career offender enhancement and sentenced Covington to 60 months on the firearm possession charge under 18 U.S.C. § 924(c), and 210 months on the drug charge under 21 U.S.C. § 841(a)(1), to run consecutively. Covington timely appealed his sentence on the firearm possession charge to this Court.

The Amended Information filed by the State of Michigan in the prison escape case charged Covington with breaking and escaping from prison contrary to Michigan

Compiled Laws section 750.193. Covington was assigned to the Muskegon Community Correction Center. The plea colloquy from Covington's subsequent conviction on that charge reveals that, one day after Covington had left the Center with permission on a laundry pass, he returned ten minutes late. Appellant Br. at 46. Knowing that he would be sent back to prison for violating the Center's rules, Covington "went out the window . . . jumped a fence and ran through the wooded area" to escape. *Id.*

II.

This Court reviews de novo a district court's legal conclusion that a defendant's prior conviction constitutes a crime of violence. *United States v. Bartee*, 529 F.3d 357, 358 (6th Cir. 2008).

U.S.S.G. § 4B1.1 provides significantly increased prison terms for a criminal defendant who qualifies as a "career offender." Before a defendant can be classified as a career offender, a court must find that he meets three requirements: (1) he was at least eighteen years old when he committed the offense charged; (2) the offense charged is a felony that qualifies as a crime of violence or a controlled substance offense; and (3) he has at least two prior felony convictions for either crimes of violence or controlled substance offenses. U.S.S.G. § 4B1.1(a).

The Guidelines then define crime of violence in § 4B1.2(a):

The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (2) is burglary of a dwelling, arson, or extortion, involves the use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

The final portion of § 4B1.2(a)(2), beginning with "otherwise," is known as the "residual clause." *See, e.g.*, *United States v. Ford*, 560 F.3d 420, 421 (6th Cir. 2009).

When determining which crimes fall within § 4B1.2(a)'s definition of crime of violence, or the "violent felony" provision of Armed Career Criminal Act (ACCA),

18 U.S.C. § 924(e)(1), federal courts use the "categorical approach." *Id.* at 421-22. The United States Supreme Court recently clarified the scope and application of the categorical approach in *Descamps v. United States*, 133 S. Ct. 2276, 2283-87 (2013). The *Descamps* Court traced the development of the categorical approach from its first appearance in *Taylor v. United States*, 495 U.S. 575 (1990), to the present. *Descamps*, 133 S. Ct. at 2283-86. In *Taylor*, the Court adopted a "formal categorical approach" that precludes sentencing courts from looking "to the particular facts underlying [a defendant's prior] convictions" when determining whether a prior conviction counts as a predicate felony for purposes of the ACCA. *Descamps*, 133 S. Ct. at 2283 (quoting *Taylor*, 495 U.S. at 600) (internal quotation marks omitted). Instead, the focus of the categorical approach is on the *elements* of a defendant's prior convictions. *Id.* ("The key, [the Supreme Court] emphasized [in *Taylor*], is elements, not facts.").

The *Descamps* Court then discussed *Shepard v. United States*, 544 U.S. 13 (2005), which created the "modified categorical approach." 133 S. Ct. at 2284. *Taylor* had posited that there would be a "narrow range of cases" where the sentencing court would have to look beyond the statutory elements to effectuate the categorical approach because the statute includes "alternative elements." *Id.* at 2283-84 (citing *Taylor*, 495 U.S. at 602). In *Shepard*, the Court actually addressed such a case. *Id.* at 2284 (citing *Shepard*, 544 U.S. at 17). The statute that served as the basis for the defendant's conviction in *Shepard* was "divisible," meaning that the statute "comprise[d] multiple, alternative versions of the crime." *Id.* The sentencing court had to look beyond the statutory elements to a restricted set of materials, including the charging documents, the terms of a plea agreement, or the plea colloquy transcript because "[n]o one could know, just from looking at the statute, which version of the offense Shepard was convicted of." *Id.* Even *Shepard* recognized, however, that the purpose of the modified categorical approach is not to determine the factual basis of the prior plea, but rather the *version of the crime* to which the defendant pled guilty. *Id.* (citing *Shepard*, 544 U.S. at 25-26). Accordingly, even the modified categorical approach is bounded by this principle. *See Johnson v. United States*, 559 U.S. 133, 144 (2010) ("[T]he 'modified categorical

approach' that we have approved permits a court to determine which statutory phrase was the basis for the conviction . . . .").

The *Descamps* Court went on to summarize the interplay between the categorical approach and the modified categorical approach as follows:

> [T]he modified approach merely helps implement the categorical approach when a defendant was convicted of violating a divisible statute. The modified approach thus acts not as an exception, but instead as a tool. It retains the categorical approach's central feature: a focus on the elements, rather than the facts, of a crime. And it preserves the categorical approach's basic method: comparing those elements . . . . All the modified approach adds is a mechanism for making that comparison when a statute lists multiple, alternative elements, and so effectively creates "several different . . . crimes."

133 S. Ct. at 2285 (quoting *Nijhawan v. Holder*, 557 U.S. 29, 41 (2009)). Accordingly, *Descamps* instructed the lower federal courts to "use the modified approach only to determine which alternative element in a divisible statute formed the basis of the defendant's conviction." *Id.* at 2293. "The modified approach does not authorize a sentencing court to substitute . . . a facts-based inquiry for an elements-based one." *Id.* at 2293. Fact-based methods of inquiry outside of the "modified categorical" step thus have been foreclosed. *See, e.g.*, *United States v. Stout*, 706 F.3d 704, 706-09 (6th Cir. 2013) (using a fact-based inquiry to "hypothetically" divide a statute).

Because a violent felony under the ACCA and a crime of violence under the Guidelines "share essentially the same definitions," *Ford*, 560 F.3d at 421, this Court applies the same analysis to determine whether a defendant's prior conviction constitutes a crime of violence under the Guidelines. *Id.* at 421-22.

### III.

In light of *Descamps*, there are two steps in applying the categorical approach to determine whether a prior conviction constitutes a crime of violence under the Guidelines or a violent felony under the ACCA. First, a court must ask whether the statute at issue is divisible by determining if the statute lists "alternative elements."

*Descamps*, 133 S. Ct. at 2293.  If so, as part of the modified categorical "step," the court may look to the *Shepard* documents—but only to see which alternative version of the offense is at issue.  *Id.*  If the statute is not divisible, the specific facts of a defendant's conviction play no role whatsoever in the analysis.  *Id.*

Next, the court must ask whether the offense the statute describes, as a category, is a crime of violence.  *See id.* at 2287 (noting that the determination is an "on-off switch" where an offense is a "predicate offense in all cases or in none").  Depending on which clauses of the definitions of violent felony and crime of violence are at issue, this inquiry may have as many as three parts.  The first potential question is whether the prior conviction has as an element "the use, attempted use, or threatened use of physical force against the person of another."  U.S.S.G. § 4B1.2(a)(1); *see also* 18 U.S.C. § 924(e)(2)(B)(i).  The second question is whether the elements of the prior conviction are equivalent to the elements of the generic definition of one of the offenses enumerated in §§ 4B1.2(a)(2) and 924(e)(2)(B)(ii):  burglary, arson, extortion, or a crime involving the use of explosives.  The final question under the residual clause is whether the elements of the prior conviction involve "conduct that presents a serious potential risk of physical injury to another."  U.S.S.G. § 4B1.2(a)(2); 18 U.S.C. § 924(e)(2)(B)(ii).  If the offense "sweeps more broadly" and "criminalizes a broader swath of conduct" than world meet these tests, then the offense, as a category, is not a crime of violence.  *See Descamps*, 133 S. Ct. at 2281, 2283, 2289-91.

## IV.

To determine whether to apply the formal categorical approach or its modified variant to section 750.193, Michigan's prison escape statute, we must first determine whether the statute is divisible.  If the statute is divisible, we must next determine which statutory phrase serves as the basis for Covington's conviction.  Because prison escape does not have "as an element the use, attempted use, or threatened use of physical force against the person of another" and is not one of the offenses enumerated in § 4B1.2(a)(2), only the residual clause can potentially bring Covington's conviction for

prison escape within the definition of a crime of violence.[1]  U.S.S.G. § 4B1.2(a).

Finally, we must analyze whether the elements of that particular statutory phrase present

the same "serious potential risk of physical injury to another" as the elements of offenses

enumerated in § 4B1.2(a)(2).  *See Sykes*, 131 S. Ct. at 2273.

We first address whether section 750.193 is divisible within the meaning of

*Descamps*.  In other words, does the statute list alternative versions of the same crime?

*Id.* at 2284.  Subsection (1), which defines the offense, provides in pertinent part:

> A person imprisoned in a prison of this state who breaks prison and
> escapes, breaks prison though an escape is not actually made, escapes,
> leaves the prison without being discharged by due process of law,
> attempts to break prison, or attempts to escape from prison, is guilty of
> a felony . . . .

Mich. Comp. Laws § 750.193(1).  Because the statute lists several, alternative ways to

violate the statute, including some escapes that involve the element of breaking and

some that do not, the statute is divisible.  *See Descamps*, 131 S. Ct. at 2284.

Accordingly, we apply the modified categorical approach.

We must next determine what particular phrase of the statute Covington violated.

The Amended Information filed with the Michigan trial court alleged as follows:

"GEORGE COVINGTON, III, did, being a person imprisoned in the Muskegon County

Correctional Center, a prison of the State of Michigan, break prison and escape; contrary

to MCL 750.193; MSA 28.390."  Because the language in the charging document

corresponds exactly to the first phrase of the divisible statute, Covington's prior

conviction was for breaking prison and escaping.

The final step in our analysis, then, is to determine whether a conviction for

breaking and escaping under section 750.193, as a category, presents the same "serious

potential risk of physical injury to another" as the offenses enumerated in § 4B1.2(a)(2).

*Sykes*, 131 S. Ct. at 2272.  The Supreme Court has decided two cases under the ACCA's

---

[1]The Government correctly concedes in its brief that "the inquiry here is whether Covington's prison escape conviction falls within the 'otherwise' residual clause."  Appellee Br. at 8.

residual clause that each used a different analysis to answer this question.  In *Begay v. United States*, 553 U.S. 137 (2008), the Court addressed whether a prior conviction under New Mexico's DUI statute fell within the scope of the residual clause and held that it did not.  *Id.* at 141-42.  The *Begay* Court reasoned that "DUI, a strict liability crime, differs from a prior record of violent and aggressive crimes" like the offenses enumerated in § 924(e)(1).  *Id.* at 148.  The analysis under *Begay*, then, is whether the statute insists on "purposeful, violent, and aggressive conduct."  *Id.* at 145 (internal quotation marks omitted).

The Supreme Court's subsequent decision in *Sykes v. United States*, 131 S. Ct 2267 (2011), addressed whether a prior conviction for vehicle flight under Indiana's resisting law enforcement statute fell within the scope of the residual clause and held that it did.  *Id.* at 2271, 2277.  The *Sykes* Court reasoned, based on the text of the ACCA's residual clause, that "levels of risk divide crimes that qualify [as violent felonies] from those that do not."  *Id.* at 2275.  The analysis under *Sykes*, then, is whether "the risk posed by [the crime in question] is comparable to that posed by its closest analog among the enumerated offenses."  *Id.* at 2273 (internal quotation marks omitted).

On its face, the *Sykes* decision appears to limit application of *Begay* to prior convictions where the statute at issue does not have "a stringent *mens rea* requirement." *Id.* at 2275.  This Court, however, has reasoned that the two analyses are more supplementary than distinct.  *See United States v. Denson*, 728 F.3d 603, 610 (6th Cir. 2013).  Here it is not necessary to reach *Begay*'s "purposeful, violent, and aggressive" standard, because the analysis would be redundant.  *See id.*

For a breaking and escaping prison conviction under section 750.193 to constitute a crime of violence under the Guidelines, the elements of breaking and escaping prison must present a similar "serious potential risk of physical injury to another" as the offenses enumerated in § 4B1.2(a)(2).  *Sykes*, 131 S. Ct. at 2272.  Those enumerated offenses are burglary of a dwelling, arson, extortion, and crimes involving the use of explosives.  U.S.S.G. § 4B1.2(a)(2).  The crime of breaking and escaping

prison under Michigan Compiled Laws section 750.193 does not categorically present comparable risks.

The district court relied on a risk that this Court has held no longer suffices to trigger the residual clause. At Covington's sentencing, the district court stated:

> In this case, in the Court's judgment, the underlying issue here is a comparison of the risk levels attendant to burglary, which the Court finds is the most analogous enumerated offense and Mr. Covington's crime . . . .
>
> As two other Circuits have noted, in the Court's judgment, the type of escape here is a stealth crime similar to burglary. You are going out of a window undetected, you are not walking out the front door where presumably there are at least personnel. I don't want to describe them as guards, but there are at least center personnel at that location. For that notion, I would cite the Pratt case at 568 F.3d at page 11. Admittedly, a First Circuit case, but the Court finds that case to be helpful, as well as the Furqueron case, 605 F.3d 612, at 615. Again, an out-of-circuit case, that's an Eighth Circuit case. Like burglary, the risk of harm here comes not from the act itself, but from the possibility of being discovered. Such discovery, says the Eighth Circuit, is likely to cause an, in their words, an eruption of violence. That's Furqueron at 615, or the Court would state here, in the language of Sykes end in confrontation leading to violence.

As this passage reflects, the district court relied on cases from the First and Eighth Circuits that reached their respective holdings based on the powder keg theory. *See United States v. Furqueron*, 605 F.3d 612, 615 (8th Cir. 2010); *United States v. Pratt*, 568 F.3d 11, 22 (1st Cir. 2009)). The label "powder keg theory" describes the rationale that "escape from a secured setting is 'a stealth crime that is likely to cause an eruption of violence if and when it is detected.'" *Furqueron*, 605 F.3d at 615 (quoting *Pratt*, 568 F.3d at 22). This rationale "has little, if any, continuing persuasiveness" in the Sixth Circuit under our precedent in *United States v. Anglin*, 601 F.3d 523, 529 (6th Cir. 2010). If the district court had not relied on the powder keg theory when conducting its risk levels analysis, it could not have concluded that Covington's prior conviction under section 750.193 is a crime of violence.

Accordingly, the most appropriate analysis compares the risk levels inherent in the elements of breaking and escaping prison under Michigan law to the risk levels inherent in § 4B1.2(a)(2)'s enumerated offenses without consideration of the powder keg theory. Because none of the enumerated offenses is a particularly close analog to breaking and escaping prison, we will compare the elements of Covington's prior conviction to all the enumerated offenses. The elements of Covington's prior conviction are (predictably) breaking and escaping. Michigan law defines breaking as applying any force at all to any method of ingress (here, egress) from a building.[2] *See, e.g.*, *People v. Toole*, 576 N.W.2d 441, 443 (Mich. Ct. App. 1998) ("Under Michigan law, any amount of force used to open a door or window to enter the building, no matter how slight, is sufficient to constitute a breaking."). In order to escape prison under section 750.193, Michigan law requires a prisoner to "remove[] himself from the imposed restraint over his person and volition." *People v. Stubblefield*, 299 N.W.2d 4, 5 (Mich. Ct. App. 1980).

The elements of breaking and escaping from prison under section 750.193 and the elements of burglary of a dwelling share only one risk: the potential for discovery and capture, which, as we have explained, we may not consider under *Anglin*. *See* 601 F.3d at 529. Further, even if we could consider this risk of confrontation, the risk posed by breaking *into* someone's home with the intent to commit a felony is considerably greater than the risk posed by breaking *out* of a prison. Finally, even if the risks associated with breaking and escaping could sometimes be comparable to those associated with burglary, the present offense also criminalizes walking out of an unguarded area by pushing open a partially ajar door. The statute thus covers a much "broader swath of conduct" than what might arguably qualify as a crime of violence. *See Descamps*, 133 S. Ct. at 2276.

In *Sykes*, the Supreme Court described the risks attendant to the elements of arson as "entail[ing the] intentional release of a destructive force dangerous to others."

---

[2]As the Michigan courts have not defined "breaking" for the purposes of section 750.193, this definition comes from case law interpreting the Michigan burglary statute, Mich. Comp. Laws section 750.110.

*Sykes*, 131 S. Ct. at 2273.  The elements of breaking and escaping from prison do not present the same risk of injury to another as intentionally unleashing a destructive force. Likewise, the risk of injury to another associated with committing a crime involving the use of explosives far outstrips the risk inherent in the elements of breaking and escaping from prison.

Finally, because breaking and escaping prison under section 750.193 does not involve a key element of extortion—a direct threat of future use of force against the person or property of another—that crime also presents risks of injury to another significantly greater than the elements of section 750.193.  *See* James Lindgren, "Blackmail and Extortion," *in* 1 Encyclopedia of Crime and Justice 115, 155 (Sanford H. Kadish ed., 1983) ("[A] person commits . . . extortion when he threatens to do bodily harm in the future." (emphasis removed)).  Under the *Sykes* risk levels approach, then, breaking and escaping prison under section 750.193 is not a crime of violence for purposes of the Guidelines.

V.

Because a conviction for breaking and escaping prison under Michigan Compiled Laws section 750.193 does not, as a category, present the same "serious potential risk of physical injury to another" as the offenses enumerated in Guidelines § 4B1.2(a)(2), we REVERSE the district court's determination and REMAND for resentencing.

---

**CONCURRENCE**

---

JANE B. STRANCH, Circuit Judge, concurring. I concur with the lead opinion in this case. I write separately only to address my prior opinion in *United States v. Denson*, 728 F.3d 603 (6th Cir. 2013). This court in *Denson* accurately applied the modified categorical approach as clarified in *Descamps v. United States*. *Id*. at 608, 612-13 (citing *Descamps v. United States*, 133 S. Ct. 2276, 2281 (6th Cir. 2013)). However, in *Denson*, I put the "divisibility" question at the end, leading to a somewhat redundant analysis. *Id*. at 612-13. I agree with my colleagues here that the proper order of analysis after *Descamps* is to put the "divisibility" question first. If a statute is divisible, then a court may consider the *Shepard* documents briefly, only to determine the alternative offense of which the defendant was convicted. *See Descamps*, 133 S. Ct. at 2283-85. From there, the courts should apply the same categorical test used for indivisible statutes. *See id.* at 2285. I find this "order-of-operations" to be more in accord with the instructions of *Descamps*.