**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 14a0724n.06

No. 13-6322

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**
Sep 16, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff - Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| | ) | EASTERN DISTRICT OF TENNESSEE |
| ARTHUR CHARLES SMITH, aka Marvon | ) | |
| Anderson | ) | |
| | ) | |
| Defendant - Appellant. | ) | |

Before: BOGGS and DONALD, Circuit Judges; and HOOD, District Judge.[*]

BOGGS, Circuit Judge. This case presents the question whether a conviction for common-law robbery under North Carolina law is categorically a "crime of violence" under § 4B1.2 of the Guidelines Manual. Arthur Smith pleaded guilty to multiple counts relating to his armed robbery of a CVS pharmacy in Sevierville, Tennessee. The district court sentenced Smith as a career offender, under § 4B1.1(c) of the Guidelines Manual, to 262 months of imprisonment. It relied on Smith's prior conviction for North Carolina common-law robbery. Smith argues that: 1) his past conviction cannot serve as a predicate offense because it does not constitute a "crime of violence" under the Guidelines Manual; and 2) judicial fact-finding of prior convictions violates the Sixth Amendment. Because the district court correctly held both that

---

[*] The Honorable Denise Page Hood, United States District Judge for the Eastern District of Michigan, sitting by designation.

1

North Carolina common-law robbery qualifies as a "crime of violence" and that Supreme Court precedent forecloses Smith's Sixth Amendment claim, we affirm the district court's sentence.

I

On April 23, 2013, Arthur Smith pleaded guilty, without a plea agreement, to: robbing a pharmacy, in violation of 18 U.S.C. § 2118(a); brandishing a firearm during and in relation to a crime of violence, in violation of § 924(c)(1); and being a felon in possession of a firearm, in violation of § 922(g)(1).

A. Presentence Report

Smith's presentence report[1] determined that U.S.S.G. § 2B3.1(a) provided a base offense level of 20 for the pharmacy-robbery conviction. Because Smith took controlled substances from the pharmacy during the robbery, the presentence report increased his offense level by one, under § 2B3.1(b)(6). And because the loss resulting from Smith's robbery was more than $10,000, the presentence report increased his offense level by one additional level, under § 2B3.1(b)(7)(B). The presentence report assigned Smith a total offense level of 22 for the pharmacy-robbery conviction.

Additionally, the presentence report determined that § 2K2.1 provided the base offense level for the sentencing of offenses under 18 U.S.C. § 922(g). Because Smith had at least two prior felony convictions for controlled-substance offenses or for what the Manual refers to as "crimes of violence," his base offense level was 24, under § 2K2.1(a)(2).

The presentence report noted that § 2K2.4 applies to the sentencing of offenses under § 924(c), the statute proscribing brandishing a firearm during a crime of violence. The report

---

[1] The United States Probation Office prepared the report using the 2012 edition of the United States Sentencing Commission Guidelines Manual.

noted that, under § 2K2.4(b), the guideline sentence for a § 924(c) conviction is the minimum term of imprisonment required by statute. The report further noted that the statutory minimum in Smith's case was seven years, consecutive to the punishment for the underlying crime.

The presentence report determined that Smith's criminal history qualified him as a "career offender" under § 4B1.1(a). Specifically, the report found that Smith was at least eighteen years old at the time he committed the robbery, that one of Smith's current convictions was for either a crime of violence or a controlled-substance offense, and that Smith had at least two prior felony convictions for controlled-substance offenses or crimes of violence. Ordinarily, a career offender's offense level, if greater than the offense level otherwise applicable, derives from the career-offender table in § 4B1.1(b). The report, however, noted that this table was not applicable because § 4B1.1(c) specifically contains a separate method of calculating the guideline range for career offenders convicted of violating § 924(c), i.e., possessing a firearm during a crime of violence. In particular, the Guidelines Manual instructs that the guideline range for a § 924(c) defendant, who also has other counts of conviction, is the greater of: (A) the sum of the mandatory minimum penalty under § 924(c) and the minimum and maximum of the otherwise applicable guideline range for the non-§ 924(c) counts; or (B) the guideline range determined using the special § 924(c) career-offender table in § 4B1.1(c)(3). The presentence report ultimately determined that Smith's guideline range was 262–327 months, which results from the special § 924(c) career-offender table. Although the presentence report did not "show its math," it presumably determined that this guideline range was greater than the sum of seven years—i.e., Smith's mandatory minimum penalty under § 924(c)—and the guideline range for Smith's non-§ 924(c) counts.

The presentence report detailed Smith's extensive criminal history, noting dozens of prior convictions, pending charges, and other arrests. The report noted that most prior convictions did not qualify for criminal-history points, largely because they were too old or insubstantial according to the Guidelines Manual. Importantly, the presentence report identified two prior convictions qualifying Smith as a "career offender" under § 4B1.1(a): 1) a January 9, 2008, controlled-substances conviction, from Greenville, South Carolina; and 2) a February 9, 2009, common-law robbery conviction, from Buncombe County, North Carolina. The North Carolina robbery conviction forms the basis of Smith's present appeal.

Smith objected to the presentence report's classification of him as a career offender. Specifically, Smith argued that his North Carolina conviction for common-law robbery did not qualify as a "crime of violence" within the meaning of § 4B1.2(a) of the Guidelines Manual. The probation officer considered Smith's objection and concluded that the robbery conviction properly qualified. The officer also stated that Smith's guideline range would be 110–137 months if the court determined that Smith was not a career offender.

### B. Sentencing

On September 30, 2013, United States District Judge Amul R. Thapar held a sentencing hearing. At sentencing, Smith renewed his previously raised objection to the career-offender designation. Smith argued that his North Carolina robbery conviction was not a "crime of violence" under the Manual. After extensive oral argument on the issue, the district court overruled Smith's objection. The district court also issued a cogent written opinion on the issue, ordering the clerk to docket an appeal on Smith's behalf once judgment issued.[2] *See United*

---

[2] At the close of sentencing, Judge Thapar told Smith: "I think you're going to want to appeal, and I frankly think you should because your attorney has raised a couple nonfrivolous arguments. . . . I'm going to direct the clerk to file [a notice of appeal] on your behalf so that

4

*States v. Smith*, Crim. No. 13-5-(3)-ART (E.D. Tenn. Sept. 30, 2013), ECF No. 74. First, the court held that North Carolina common-law robbery is not categorically a "crime of violence" under § 4B1.2(a)(1), the "physical-force clause." *Smith*, Crim. No. 13-5-(3)-ART, slip op. at 3. Second, the court held that North Carolina common-law robbery *does* qualify as a "crime of violence" under § 4B1.2(a)(1), the "residual clause." *Smith*, Crim. No. 13-5-(3)-ART, slip op. at 5. The district court, after discussion with counsel and the government, agreed that Smith's guideline range was 262–327 months.

The district judge conducted a thorough discussion with counsel about the § 3553 factors and about whether a below-guidelines variance was warranted. The government argued that Smith was "the epitome of a career offender" and that his case presented "basically no redeeming qualities." Smith's counsel emphasized Smith's age and poor health. The district court, noting Smith's "37 arrests" and "multiple robberies," declined to vary below the bottom end of the guideline range. But in light of "the combination of [Smith's] upbringing, his poor health, [and] his age," the district court imposed a sentence of 262 months of imprisonment, the bottom end of the guideline range.

On appeal, Smith argues that North Carolina common-law robbery does not constitute a "crime of violence" under § 4B1.1(a) of the Guidelines Manual and that he lacks the predicate offenses to qualify as a career offender. He also argues, as he did below, that the Sixth Amendment requires that the fact of prior conviction, if it increases the penalty, must be charged in the indictment and submitted to a jury and that the Supreme Court's decision in *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), should be overruled.

---

your rights can be protected." Smith's notice of appeal notes that it was "prepared and entered as directed by Judge in open Court."

The crime-of-violence issue is important because were Smith not sentenced as a career offender, his sentence would be significantly lower than the 262-month sentence that he received.

## II

We review de novo a district court's legal conclusions underlying the guideline range chosen. *United States v. Bolds*, 511 F.3d 568, 579 (6th Cir. 2007); *see, e.g.*, *United States v. Rodriguez*, 664 F.3d 1032, 1035 (6th Cir. 2011) (de novo review of whether aggravated assault, under Ohio law, qualified as a "crime of violence").

## III

### A. Career Offender

The Guidelines Manual instructs sentencing courts, when calculating a defendant's guideline range, to determine the offense-guideline section applicable to the offense of conviction. § 1B1.1(a)(1). The presentence report correctly determined that § 2B3.1 is the guideline section applicable to convictions under 18 U.S.C. § 2118(a), § 2K2.1 is the section applicable to convictions under 18 U.S.C. § 922(g), and § 2K2.4 is the section applicable to convictions under § 924(c). Ordinarily, the Manual establishes the total offense level for a defendant convicted of multiple counts using the rules specified in Part D of Chapter Three. § 1B1.1(a)(4). The Manual, however, provides an alternate method of establishing the offense level for defendants who meet certain criteria and who qualify as what the Manual refers to as "career offender[s]." §§ 1B1.1(a)(6), 4B1.1. Defendants deemed career offenders generally are assigned an offense level not from the offense-guideline section applicable to the offense of conviction but according to the specific rules of § 4B1.1. To qualify as a career offender, a defendant must meet three criteria: 1) the defendant must be at least 18 at the time of the instant

6

offense; 2) the instant conviction must be a felony either for a crime of violence or a controlled-substance offense; and 3) the defendant must have at least two prior felony convictions for either a crime of violence or a controlled-substance offense. § 4B1.1(a).

At issue in this case is the third condition—whether Smith has two prior felony convictions that count as predicate offenses. Smith's presentence report lists numerous prior criminal convictions, two of which served as predicate offenses for career-offender purposes. In 2008, Smith was convicted in South Carolina state court of possession of a controlled substance, with the intent to distribute; possession of methamphetamine; and possession of heroin. In 1999, Smith was convicted in North Carolina state court of common-law robbery.

Smith argues that the North Carolina conviction cannot count as a predicate offense because it is not a "crime of violence" within the meaning of the Guidelines Manual. He does not dispute that his South Carolina conviction is a controlled-substance offense and a first predicate offense for career-offender purposes. At issue is whether Smith has a second.

At sentencing, the district court overruled Smith's objection to counting the North Carolina conviction because the district court concluded that the offense qualified as a "crime of violence" under § 4B1.2(a)(2), the "residual clause." *See Smith*, Crim No. 13-5-(3)-ART, slip op. at 5. On appeal, Smith identifies this conclusion as error and argues that his prior North Carolina conviction does not qualify as a "crime of violence." The district court observed that whether North Carolina common-law robbery is a "crime of violence" is a "matter of first impression" in this circuit.

### B. "Crime of Violence"

The Guidelines Manual itself defines "crime of violence." A "crime of violence" is any crime punishable by a term of imprisonment greater than one year that "[1] has as an element the

7

use, attempted use, or threatened use of physical force against the person of another; or [2] is burglary of a dwelling, arson, or extortion, involves use of explosives, or [3] otherwise involves conduct that presents a serious potential risk of physical injury to another." § 4B1.2(a).

The Manual's definition of "crime of violence" closely tracks the definition of "violent felony" in the Armed Career Criminal Act (ACCA). *See* § 924(e)(2)(B). The one difference is that the Manual's enumerated-offense clause expressly refers to "burglary of a dwelling," whereas the ACCA refers only to "burglary."[3] Despite the nearly identical definitions between the Manual and the ACCA, the Manual expressly states that "the definition[n] of 'violent felony' . . . in 18 U.S.C. § 924(e)(2) [is] not identical to the definition[n] of 'crime of violence' . . . used in [the Guidelines Manual]." § 4B1.4 cmt. n.1. Notwithstanding this directive from the Sentencing Commission, we have previously determined that we decide whether an offense is a "crime of violence" under the Manual in the same way as we decide whether an offense is a "violent felony" under the ACCA "because both share essentially the same definitions." *United States v. Gibbs*, 626 F.3d 344, 352 n.6 (6th Cir. 2010); *see Johnson v. United States*, 559 U.S. 133, 140 (2010) (construing "violent felony" under § 924(e) by reference to the statutory definition of "crime of violence" in 18 U.S.C. § 16).

Under North Carolina law, common-law robbery is "the felonious, non-consenual taking of money or personal property from the person or presence of another *by means of violence or fear*." *State v. Bell*, 603 S.E.2d 93, 117 (N.C. 2004) (emphasis added); *accord State v. Smith*, 292 S.E.2d 264, 270 (N.C. 1982); *State v. Lawrence*, 136 S.E.2d 595 (N.C. 2004). The North Carolina Supreme Court has held that a state court may convict for common-law robbery by

---

[3] The Supreme Court has interpreted "burglary" in the ACCA to refer to burglary of "a building or structure." *Taylor v. United States*, 495 U.S. 575, 599 (1990).

proving *either* violence or fear. *State v. Sawyer*, 29 S.E.2d 34, 37 (N.C. 1944) ("[I]t is not necessary to prove both violence and putting in fear[—]proof of either is sufficient.").

North Carolina common-law robbery is not "burglary of a dwelling, arson, or extortion, [and it does not] involve[e the] use of explosives." § 4B1.2(a)(2). We determine, then, whether the statute falls within the Guidelines Manual's "physical-force clause"—i.e., "has as an element the use, attempted use, or threatened use of physical force against the person of another"—or whether the crime falls within the Manual's "residual offense"—i.e., "otherwise involves conduct that presents a serious potential risk of physical injury to another." § 4B1.2(a). Because the district court determined that North Carolina common-law robbery is a "crime of violence" under the residual clause, we begin there.

### C. The Residual Clause

### 1

A prior conviction qualifies as a "crime of violence" under the Manual if it "involves conduct that presents a serious risk of physical injury to another." § 4B1.2(a)(2). We must determine whether common-law robbery under North Carolina law meets this criterion.

In order to determine whether an offense qualifies as a predicate under the residual clause, courts must compare the elements of the prior offense of conviction with the elements contained in the residual clause. Courts must ask "whether the *elements of the offense* are of the type that would justify its inclusion within the residual provision, without inquiring into the specific conduct of the particular offender." *James v. United States*, 550 U.S. 192, 202 (2007) (emphasis in original). Here, the "pivotal question" is whether taking money or property from the person or presence of another by means of violence or fear is conduct that presents a serious risk of physical injury to another. *Id.* at 203.

9

Certain penal laws are what the Supreme Court calls "divisible" offenses because they "se[t] out one or more elements of the offense in the alternative." *Descamps v. United States*, 133 S. Ct. 2276, 2281 (2013). When a state "list[s] potential offense elements in the alternative," it "renders opaque which element played a part in the defendant's conviction." *Id.* at 2283. The Court gave, as an example of a "divisible" statute, one "stating that burglary involves entry into a building or an automobile." *Id.* at 2281.

Under this understanding, common-law robbery under North Carolina law is a divisible offense because it "comprises multiple, alternative versions of the crime." *Id.* at 2284; *see United States v. Covington*, 738 F.3d 759, 764 (6th Cir. 2014) (Michigan prison-escape statute divisible under *Descamps* because it "lists several, alternative ways to violate the statute"); *United States v. Hockenberry*, 730 F.3d 645, 669 (6th Cir. 2013) (Pennsylvania burglary statute divisible under *Descamps* because it "lists alternative elements in the statutory text"). A person commits common-law robbery in North Carolina when he non-consensually takes "money or personal property from the person or presence of another by means of *violence or fear*." *Bell*, 603 S.E.2d at 117 (emphasis added). Because the crime has alternative elements, common-law robbery under North Carolina law, is, as the district court correctly concluded, a divisible offense.

In order to compare the elements of an offense to those in the residual clause, courts employ what the Supreme Court has "labeled (not very inventively) the 'modified categorical approach.'"[4] *Decsamps*, 133 S. Ct. at 2281. This approach is a two-step process. First, courts

---

[4] Since the Supreme Court decided *Descamps* last year, we have repeatedly applied the modified categorical approach to divisible statutes when conducting a residual-clause analysis. *See United States v. Mitchell*, 743 F.3d 1054, 1060–67 (6th Cir. 2014) (convictions under Tennessee robbery statutes are categorically violent felonies under the residual clause); *United States v. Covington*, 738 F.3d 759, 764–65 (6th Cir. 2014) (convictions under Michigan prison-escape statute are not

10

determine whether "one alternative (say, a building) matches [the] element[s]" in the residual clause" but whether "the other (say, an automobile) does not." *Ibid.* (parentheticals in original). If that is the case, then courts can "consult a limited class of documents, such as indictments and jury instructions, to determine which alternative formed the basis of the defendant's prior conviction." *Ibid.* Only then can the court "do what the categorical approach demands: compare the elements of the crime of conviction . . . with the elements" contained within the residual clause. *Ibid.*

As explained above, common-law robbery under North Carolina law is a divisible offense. Consider two alternatives of the elements provided by the North Carolina Supreme Court. One version requires taking money or property from a person by means of violence. Another requires taking money or property from a person by means of fear. In order for North Carolina common-law robbery categorically to be a "crime of violence" under the Guidelines Manual, we must conclude that *both* alternative sets of elements—taking by means of violence and taking by means of fear—present a serious risk of physical injury to another. *See, e.g.*, *United States v. Mitchell*, 743 F.3d 1054, 1065 –66 (6th Cir. 2014). Smith does not argue that taking money or property by means of violence does not present a serious risk of physical injury to another. Our focus, then, is whether accomplishing the robbery *by means of fear* presents a serious risk of physical injury to another.

---

categorically violent felonies under the residual clause); *United States v. Denson*, 728 F.3d 603, 608–10 (6th Cir. 2013) (convictions under Ohio inciting-violence statute are not categorically crimes of violence under the residual clause but defendant's conviction was a crime of violence in light of *Shepard* documents); *United States v. Johnson*, 530 F. App'x 528, 532–33 (6th Cir. 2013) (convictions under Tennessee robbery are not categorically violent felonies under the residual clause but defendant's robbery conviction was a violent felony in light of *Shepard* documents).

11

The North Carolina Supreme Court has interpreted the word "fear" as an element of robbery. In *State v. Moore*, the defendant in a robbery case argued that the evidence was insufficient to support his conviction because the victim testified "that he 'was not scared or in fear of (his) life.'" 183 S.E.2d 546, 547 (N.C. 1971). The North Carolina Supreme Court interpreted "fear" expansively: it noted that the word "fear" in the definition of common-law robbery "is not confined to fear of death" and that common-law robbery does not require "the use or threatened use of a firearm or other dangerous weapon."[5] Although fear of death is not necessary, the state supreme court has contemplated that "fear" refers to fear of bodily injury:

> No matter how slight the cause creating the fear may be or by what other circumstances the taking may be accomplished, if the transaction is attended with such circumstances of terror, such threatening by word or gesture, as in common experience are likely to create an apprehension of danger and induce a man to part with his property *for the sake of his person*, the victim is put in fear.

*State v. Sawyer*, 29 SE.2d 34, 37 (N.C. 1944) (emphasis added) (internal quotation marks omitted); *accord State v. Elkins*, 702 S.E.2d 744, 748 (N.C. App. 2011).

Based on the North Carolina Supreme Court's interpretation of "fear," Smith argues that North Carolina common-law robbery covers conduct that does not present a serious risk of physical injury. Surely Smith is correct that the offense definition *could* cover *some* conduct that does not present a serious risk of physical injury. One can imagine a robbery that reasonably places a person in fear yet does not present a serious risk of physical injury. Smith argues that "fear does not have to be [fear] of physical injury."[6] Yet the law is just the opposite: a person

---

[5] This statement, technically, was dicta, as the defendant in *Moore* was charged not with common-law robbery but under N.C. Gen. Stat. § 14-87, "Robbery with firearms or other dangerous weapons." Nonetheless, we defer to the North Carolina Supreme Court on the interpretation of North Carolina law.

[6] For this proposition, Smith's citation is "*See Moore* at 204-205." *State v. Moore* does not appear on pages 204–05 of *South Eastern Reporter Second* or of *North Carolina Reports*. In the context of his brief, Smith appears to attempt to cite *Smith v. White*, 142 N.C. App. 201, 204–05,

12

must be in fear "for the sake of his person." *Sawyer*, 29 S.E.2d at 37. Taking money or property from the person or presence of another by placing that person in fear of bodily injury, then, does generally present a serious risk of physical injury to another.

Our conclusion would not be different even if Smith were correct that the element of fear in North Carolina common-law robbery did not require fear of physical injury. He, cleverly, offers examples of robbery by means of "fear of losing a job" and "fear of financial ruin." These kinds of robberies are, indeed, conceivable: "Give me your money, or else I'll tell my uncle to fire you!" and "Give me your money, or else I'll expose your Ponzi scheme!" These hypotheticals, though perhaps the stuff of law-school exams, are not the basis of the analysis. There are, of course, ways of committing robbery that do not "pose a realistic risk of confrontation or injury to anyone." *James*, 550 U.S. at 207. But the Supreme Court has held that analysis under the residual clause, even when the analysis addresses a portion of a divisible statute, rests on "inherently probabilistic concepts." *Ibid.* "[T]he proper inquiry . . . is whether the conduct encompassed by the elements of the offense*, in the ordinary case*, presents a serious potential risk of injury to another." *Id.* at 208 (emphasis added). We think that, *in the ordinary case*, robbing someone by means of placing him in fear for his person *does* present a serious risk of physical injury. Here, the mere possibility that a person could, conceivably, commit the offense without creating a serious risk of physical injury to another is insufficient to move North Carolina common-law robbery outside the residual clause.

Additionally, focusing on exceptional, hypothetical cases is a misapplication of the modified categorical approach. We have sometimes said that "[i]f it is possible to violate the

542 S.E.2d 265, 268 (N.C. App. 2001). Nothing in *White* suggests that "fear does not have to be [fear] of physical injury." *White*, in fact, contains the same quotation from *State v. Sawyer* offered above. *See White*, 542 S.E.2d at 268.

13

statute in a way that would constitute a crime of violence and in a way that would not, the court may consider the indictment, guilty plea, or similar documents to determine whether they necessarily establish the nature of the prior conviction." *Gibbs*, 626 F.3d at 352. In light of recent Supreme Court decisions, we clarify that this is not quite right. "One can always hypothesize unusual cases in which even a prototypically violent crime might not present a genuine risk of injury." *James*, 550 U.S. at 208. Accordingly, the inquiry is not whether it is possible for a defendant to commit a crime in a way that would not be a violent felony. As the Supreme Court said last year, the sentencing court must "look only to the fact that the defendant ha[s] been convicted of crimes falling within certain categories, and not to the facts underlying the prior convictions." *Descamps*, 131 S. Ct. at 2286. Here, the mere fact that Smith was convicted of North Carolina common-law robbery—regardless under which version of elements—is sufficient to make that offense a "crime of violence" under the Guidelines Manual. We need not consider whether the offense also qualifies as a crime of violence under the physical-force clause.

2

In light of the difficulties presented by analysis under the residual clause,[7] our circuit has at times reached varying results about whether various state theft offenses qualify as crimes of violence. In *United States v. Mekediak*, we held that the crime of unarmed robbery under Mich. Comp. Laws § 750.530—a felony committed without a weapon "by force and violence, or by assault or putting in fear"—"fits comfortably within the residual clause of 'crime of violence.'" 510 F. App'x 348, 353 (6th Cir. 2013). Similarly, we have held that larceny and attempted larceny under Mich. Comp. Laws § 750.530— a felony committed "by stealing from the person

---

[7] *See Sykes*, 131 S. Ct. 2267, 2284 (2011) (Scalia, J., dissenting).

14

of another"—falls within the residual clause and, therefore, is a "crime of violence" under the Guidelines Manual. *United States v. Payne*, 163 F.3d 371, 375 (6th Cir. 1998) (larceny); *United States v. Taylor*, 696 F.3d 628, 631 (6th Cir. 2012) (attempted larceny). Our decision rested on the observation that Michigan interprets its larceny statute "narrowly to require that the property be taken from the possession of the victim or be taken from within the immediate presence or area of control of the victim." *Payne*, 163 F.3d at 375. The Michigan decisions are squarely on point, given that § 750.530 contains the same violence-or-fear language as the North Carolina statute.

Our analysis of Tennessee's robbery laws, however, has produced contradictory results in recent years. In a series of cases, we have interpreted two Tennessee robbery statutes—both of which list violence or fear as alternative elements—to determine whether convictions under them may serve as predicate offenses under the Manual and under the ACCA: Tenn. Code. Ann. § 39-13-401(a)—prohibiting "the intentional or knowing theft of property from the person of another by violence or putting the person in fear" and the now-repealed Tenn. Code. Ann. § 39-2-501(a)—prohibiting "the felonious and forcible taking from the person of another, goods or money of any value, by violence or putting the person in fear."

First, in *United States v. Gloss*, a published opinion, we held that facilitation of aggravated robbery under Tennessee law—which requires that the crime be accomplished "with a deadly weapon or by display of an article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon" or where "the victim suffers serious bodily injury"—is a "violent felony" under the ACCA. 661 F.3d 317, 318–19 (6th Cir. 2011). That decision rested squarely on the physical-force clause—not the residual clause. *See id.* at 318, 320 ("not decid[ing] whether the [offense] also qualifies under the residual clause"). Second, in *United*

15

*States v. Fraker*, an unpublished opinion, we held that robbery under § 39-13-401(a), the current Tennessee law, is not a violent felony. 458 F. App'x 461, 463 (6th Cir. 2012). In *Fraker*, we said that an offense qualifies as a predicate offense if it is a felony "that has an element the use, attempted use, or threatened use of physical force against the person of another." *Ibid.* We concluded that Tennessee's "robbery statute includes criminal activity outside the scope of the ACCA because a defendant can violate the statute *by employing only fear*, rather than physical violence or force." *Ibid.* (emphasis added). *Fraker* did not address or refer to the enumerated-offense clause or the residual clause in any way, but our holding that Tennessee robbery is not a violent felony necessarily determined that the offense does not qualify under any of the three possible avenues.[8]

The following year, in *United States v. Johnson*, another unpublished opinion, we considered convictions under the substantively identical but now-repealed § 39-2-501(a). 530 F. App'x 528, 531–32 (6th Cir. 2013). *Johnson* "follow[ed] the reasoning of *Fraker*," rather than *Gloss*, and declined to hold that a robbery conviction under § 39-2-501(a) "is categorically a violent felony" because "the robbery . . . within [the] statute of conviction can be violated by employing only fear and not violence." *Id.* at 532.[9] Earlier this year, in a published opinion, we held, "[c]ontrary to *Fraker* and *Johnson*," that robbery under both Tennessee's repealed statute and its current statute qualify as violent felonies. *United States v. Mitchell*, 743 F.3d 1054, 1058–63 (6th Cir. 2014); *accord United States v. Huntley*, -- F. App'x --, No. 14-5097, 2014 WL 3015020 (6th Cir. July 7, 2014) (robbery under Tenn. Code. Ann. § 39-13-401 also a "crime of

---

[8] In *Fraker*, the court proceeded to affirm the defendant's sentence under the ACCA because the *Shepard* analysis revealed that the defendant admitted to robbery by means of violence. *Fraker*, 458 F. App'x at 464.

[9] In *Johnson*, as in *Fraker*, the court ultimately affirmed the defendant's sentence under the ACCA because "application of the modified categorical approach resolve[d] the matter in the government's favor." *Johnson*, 530 F. App'x at 532.

violence" under the Guidelines Manual). We concluded that robbery under Tennessee law categorically is a violent felony under *both* the physical-force clause and the residual clause. *Mitchell*, 743 F.3d at 1060. We declined to follow *Fraker* and *Johnson* because we said that those decisions "turned to the colloquial understanding of fear" and "failed to apply the definition of 'fear' enunciated by the Tennessee Supreme Court." *Id.* at 1059–60. Relevant to the *Mitchell* court was that the Tennessee Supreme Court interpreted "fear" in its robbery statutes to refer to "fear of bodily injury and of present personal peril from violence offered or impending." *Id.* at 1059 (quoting *State v. Taylor*, 771 S.W.2d 387, 398 (Tenn. 1989)).

These prior decisions do not control whether common-law robbery under North Carolina law is a crime of violence. But the decision we reach is generally consistent with our own prior published decisions. We note that North Carolina's definitions of robbery and of "fear" are similar to Tennessee's. Our holding is limited to construing the offense of common-law robbery under North Carolina law. Every state statute, for better or worse, presents a different case when determining whether it qualifies as a crime of violence under the residual clause. ACCA decisions do not control beyond the specific statute under consideration in the jurisdiction issuing the ruling.

3

The decision we reach is also consistent with opinions from other circuits, including the circuit encompassing North Carolina. Two circuits have held that common-law robbery under North Carolina law is a crime of violence under the Guidelines Manual. *See United States v. Carmichael*, 408 F. App'x 769, 771 (4th Cir. 2011); *United States v. Moore*, 223 F. App'x 422, 424 (5th Cir. 2007) (per curiam) (with minimal analysis); *see also United States v. Ellis*, 564 F.3d 370, 377–79 (5th Cir. 2009) (not plain error to count attempted common-law robbery

17

under North Carolina law as a predicate offense). Additionally, the Seventh Circuit has reached the same result when analyzing Indiana's robbery statute, which has elements nearly identical to the North Carolina offense. *See United States v. Lewis*, 405 F.3d 511, 514 (7th Cir. 2005) (robbery under Ind. Code 35-42-5-1 is a crime of violence under the residual clause because "fear" under Indiana law "is fear of physical injury rather than of defamation").

The district court may have incorrectly suggested that that we are bound by the Fourth Circuit's determination about whether a conviction under the law of a state within its jurisdiction qualifies as a crime of violence. At sentencing, the district court asked Smith's counsel: "And you agree that the Fourth Circuit [opinion in *Carmichael*] is controlling unless the Supreme Court says otherwise?"; and "Why isn't [the Fourth Circuit] binding at the very least[?]" We clarify that whether an offense qualifies as a crime of violence under the Manual or as a violent felony under the ACCA "is a question of federal law, not state law." *Johnson*, 559 U.S. at 138; *accord Mitchell*, 743 F.3d at 1058; *United States v. Rede-Mendez*, 680 F.3d 552, 225 (6th Cir. 2012) ("[W]hether a crime is a crime of violence is a question of federal law."). Just as we are not bound by a state high court's interpretation of federal law, so too are we not bound by another circuit's decision. A circuit opinion concerning a state law from within its jurisdiction may be especially instructive, though reason might also suggest taking a different course. To be sure, "[w]e are, however, bound by the [North Carolina] Supreme Court's interpretation of state law, including its determination of the elements" of common-law robbery. *Johnson*, 559 U.S. at 138; *accord Johnson v. Fankell*, 520 U.S. 911, 916 (1997) (No "federal tribunal has any authority to place a construction on a state statute different from the one rendered by the highest court of the State.").

18

IV

Smith also argues, as he did below, that the Sixth Amendment prohibits judicial fact-finding of a defendant's prior convictions for the purpose of increasing a sentence. Smith correctly acknowledges that Supreme Court law forecloses his argument. "[T]he Constitution does not impose th[e] requirement . . . . that [a defendant's] recidivism must be treated as an element of his offense." *Almendarez-Torres v. United States*, 523 U.S. 224, 247 (1998). The fact of prior conviction, even if it increases the maximum penalty for a crime, does not need to be "charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." *Apprendi v. United States*, 530 U.S. 466, 476 (2000). Smith argues that *Almendarez-Torres* should be overruled. "[W]e must follow [*Almendarez-Torres*] until the Supreme Court expressly overrules it." *United States v. Mack*, 729 F.3d 594, 609 (6th Cir. 2013).

Smith states that he raises the *Almendarez-Torres* claim solely to preserve the issue. It is so preserved.

V

The North Carolina Supreme Court interprets "fear" in its robbery statute to refer to fear of bodily injury. Apart from this, the conduct encompassed by robbery by means of fear, in the ordinary case, involves fear of bodily harm. In light of this, we conclude that common-law robbery under North Carolina presents a serious risk of physical injury to another and, thus, categorically is a crime of violence under § 4B1.2 of the Guidelines Manual. Smith's Sixth Amendment claim fails under *Almendarez-Torres*. We, therefore, AFFIRM the district court's sentence.